FAIRVIEW DEVELOPERS, INC., AND J.C.H. HOLDINGS, LLC, PLAINTIFFS v.
MICKEY MILLER, DEFENDANT

No. COA07-145

(Filed 6 November 2007)

## 1. Vendor and Purchaser—contract to purchase property—failure to close within required time

Plaintiff developers' contractual rights in property under a contract to purchase terminated where the contract's language was plain and unambiguous that plaintiffs had thirty days to close from the end of the extended property examination period, defendant vendor did not consent to plaintiffs' request for an additional delay, and plaintiffs failed to close on the property within the time required under the contract.

## 2. Vendor and Purchaser—time is of the essence clause—acceptance of earnest money—no waiver

Defendant vendor neither intentionally nor implicitly waived a "time is of the essence" clause in a contract for the purchase of property by her acceptance of the payment of earnest money where defendant was entitled to release and delivery of the earnest money under the provisions of the contract after plaintiff developers failed to close on the purchase by the time specified in the contract.

Appeal by plaintiffs from order entered 4 May 2006 by Judge Susan C. Taylor in Union County Superior Court. Heard in the Court of Appeals 10 October 2007.

*Goodwin & Hinson, P.A., by Matthew B. Smith, for plaintiffs-appellants.*

*James, McElroy & Diehl, P.A., by Richard B. Fennell and Preston O. Odom, III, for defendant-appellee.*

**FAIRVIEW DEVELOPERS, INC. v. MILLER**

[187 N.C. App. 168 (2007)]

TYSON, Judge.

Fairview Developers, Inc. ("Fairview") and J.C.H. Holdings, LLC ("J.C.H.") (collectively, "plaintiffs") appeal from order entered denying their motion for partial summary judgment and granting Mickey Miller's ("defendant") motion for summary judgment. We affirm.

## I. Background

J.C.H. entered into an offer to purchase and contract with defendant on 20 February 2004. J.C.H. agreed to purchase approximately twenty-four acres of real property situated in Union County, North Carolina. An addendum to the contract granted J.C.H. the right to inspect or conduct surveys on the property within ninety days from the acceptance date of the contract ("the examination period"). The addendum to the contract also granted J.C.H. the option to extend the examination period for up to sixty additional days by paying a $2,500.00 non-refundable deposit for the first thirty day extension and a $5,000.00 non-refundable deposit for the second thirty day extension. The addendum to the contract stated, "[c]losing will occur on or before 30 days after the removal of the last contingency. . . . *Time is of the essence as to the terms of this contract.*" (Emphasis supplied).

On 20 May 2004, the last day of the initial ninety day examination period, J.C.H. assigned its contract rights to Fairview. Fairview exercised the option to extend the examination period for sixty additional days. The examination period was extended until 19 July 2004. Neither J.C.H. nor Fairview voiced or communicated to defendant any concerns or raised any issues regarding the property during the initial or extended examination periods. After executing the assignment of the contract, plaintiffs discovered they would be required to install approximately 3,000 additional feet of sewer line above what they had originally estimated to service their development.

On 19 August 2004, defendant contacted James Roese ("Roese"), member-manager of J.C.H., to discuss the closing she expected to occur the following day. Roese told defendant about the additional sewer extension and costs and informed her Fairview would need an additional thirty days to close on the property.

Defendant continuously stated that she was ready, willing, and able to close on the property immediately. Defendant did not consent to Roese's requested additional delay and repeatedly told him she had to consult with her attorney to ascertain her options if closing did not occur.

On 31 August 2004, J.C.H. released $10,000.00 earnest money to defendant by placing a check in her mailbox. Plaintiffs asserted the release of the earnest money served as notification of a release of their contingencies and proposed a closing for 30 September 2004. On 1 September 2004, defendant sent a letter to J.C.H. declaring the contract null and void. J.C.H., through counsel, informed defendant that: (1) she had accepted the $10,000.00 earnest money after the time to close had expired; (2) there was no firm closing date set in the contract; and (3) J.C.H. intended to close on the property on 30 September 2004. Defendant did not appear at the 30 September 2004 closing.

Plaintiffs instituted an action on 4 October 2004, seeking specific performance of the contract, or in the alternative, damages for breach of contract. Plaintiffs moved for partial summary judgment based upon the assertion that defendant had waived the "time is of the essence" provision in the contract. Plaintiffs' motion was denied. Defendant moved for summary judgment on all claims. The trial court granted defendant's motion for summary judgment. Plaintiffs appeal.

## II. Issues

Plaintiffs argue the trial court erred by: (1) granting defendant's motion for summary judgment on all claims and (2) denying their motion for partial summary judgment on the issue of whether defendant had waived the "time is of the essence" provision in the contract.

## III. Motion for Summary Judgment

[1] Plaintiffs argue the trial court erred in granting defendant's motion for summary judgment on all claims. We disagree.

### A. Standard of Review

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. The party moving for summary judgment ultimately has the burden of establishing the lack of any triable issue of fact.

A defendant may show entitlement to summary judgment by (1) proving that an essential element of the plaintiff's case is non-existent, or (2) showing through discovery that the plaintiff cannot produce evidence to support an essential element of his or her claim, or (3) showing that the plaintiff cannot sur-

mount an affirmative defense. Summary judgment is not appropriate where matters of credibility and determining the weight of the evidence exist.

Once the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a prima facie case at trial. To hold otherwise . . . would be to allow plaintiffs to rest on their pleadings, effectively neutralizing the useful and efficient procedural tool of summary judgment.

*Draughon v. Harnett Cty. Bd. of Educ.*, 158 N.C. App. 208, 212, 580 S.E.2d 732, 735 (2003) (internal citations and quotations omitted), *aff'd per curiam*, 358 N.C. 131, 591 S.E.2d 521 (2004). We review an order allowing summary judgment *de novo*. *Summey v. Barker*, 357 N.C. 492, 496, 586 S.E.2d 247, 249 (2003). "If the granting of summary judgment can be sustained on any grounds, it should be affirmed on appeal." *Shore v. Brown*, 324 N.C. 427, 428, 378 S.E.2d 778, 779 (1989).

### B. Contract Interpretation

Plaintiffs argue the language of the contract is ambiguous and its interpretation is a question of fact for a jury. We disagree.

North Carolina law requires a court to interpret a contract by examining its language for indications of the parties' intent at the moment of execution. *State v. Philip Morris USA Inc.*, 359 N.C. 763, 773, 618 S.E.2d 219, 225 (2005). The intention of the parties must be gathered and viewed from the four corners of the instrument. *Jones v. Realty Co.*, 226 N.C. 303, 305, 37 S.E.2d 906, 907 (1946) ("This intention is to be gathered from the entire instrument, viewing it from its four corners."). "[I]f only one reasonable interpretation exists, the courts must enforce the contract as written; they may not, under the guise of construing an ambiguous term, rewrite the contract or impose liabilities on the parties not bargained for and found therein." *Woods v. Nationwide Mutual Ins. Co.*, 295 N.C. 500, 506, 246 S.E.2d 773, 777 (1978).

Plaintiffs argue the language in the contract is susceptible to multiple interpretations and that the last contingencies were not removed until plaintiffs waived them and requested a closing date. Defendant argues, and we agree, that any contingency had to be asserted, waived, or removed during the initial or extended examination periods.

The contract permits plaintiffs, as buyers, to terminate the agreement if, *"prior to the expiration of the examination period,* buyer determines that the property is unsuitable for any reason" and gives written notice to the seller. (Emphasis supplied). Upon giving such notice, the parties agreed the contract, "shall terminate and Buyer will receive a full return of the Earnest Money." The contract and its addendum also unambiguously state, "[c]losing will occur on or before 30 days after the removal of the last contingency." The contingencies of the contract were listed as, "liens, encumbrances, or other conditions such as *sewer,* water, or other governmental moratoriums having an effect on said property." (Emphasis supplied).

Plaintiffs exercised the option to extend the examination period to its maximum length of sixty additional days by paying defendant a non-refundable deposit of $7,500.00. Plaintiffs had until 19 July 2004 to identify any contingency that may affect closing and to decide whether to close on the property or to terminate the contract. By plaintiffs' failure to raise or communicate any issue during the initial or extended examination periods, the contract established a firm closing date of 18 August 2004, thirty days after 19 July 2004. To assert any vendee rights under the contract, plaintiffs were required to complete the closing or terminate the contract on or before this date.

Since plaintiffs failed to close within the contract's designated time period, their contractual rights in the property terminated. The contract language is plain and unambiguous on its face and will be enforced as written as a matter of law. *Cleland v. Children's Home,* 64 N.C. App. 153, 156, 306 S.E.2d 587, 589 (1983). The trial court properly granted defendant's motion for summary judgment. This assignment of error is overruled.

### C.  Waiver

[2] Plaintiffs also argue defendant waived the contract's "time is of the essence clause" through her subsequent actions on and after 18 August 2004. We disagree.

This Court has stated:

Waiver is always based upon an express or implied agreement. There must always be an intention to relinquish a right, advantage or benefit. The intention to waive may be expressed or implied from acts or conduct that naturally leads the other party to believe that the right has been intentionally given up.

FAIRVIEW DEVELOPERS, INC. v. MILLER

[187 N.C. App. 168 (2007)]

*Patterson v. Patterson,* 137 N.C. App. 653, 667, 529 S.E.2d 484, 492, *disc. rev. denied,* 352 N.C. 591, 544 S.E.2d 783 (2000). "There can be no waiver unless it is intended by one party and so understood by the other, or unless one party has acted so as to mislead the other." *Klein v. Avemco Ins. Co.,* 289 N.C. 63, 68, 220 S.E.2d 595, 599 (1975) (internal citation omitted).

Defendant communicated with plaintiffs on 19 August 2004 and agreed to close on 20 August 2004, two days after the closing should have occurred. Defendant's waiver, if any, is limited to the two additional days she allowed for the closing to occur. Defendant did not waive the "time is of the essence" clause.

Plaintiffs argue defendant's acceptance of the earnest money and her subsequent refusal to close waived her right to terminate the contract. We disagree.

Defendant never agreed to plaintiffs' demand that closing be further extended to occur on 30 September 2004. Defendant was entitled to release and delivery of the earnest money under the terms of the contract. The contract specifically stated, "[i]n the event this offer is accepted and Buyer breaches this contract, then the earnest money shall be forfeited, but such forfeiture shall not affect any other remedies available to seller for such breach." Plaintiffs' examination period expired without any notice of objection to defendant and plaintiffs failed to timely close on the property. Defendant was entitled to the release of the earnest money deposit under the terms of the contract.

The contract contained a specific provision stating, "[t]ime is of the essence as to the terms of this contract." This clause clearly and unambiguously indicates that a definitive time to close was a vital and essential term to the contract.

It is well established that "[a] party may waive a contract right by an intentional and voluntary relinquishment." *McNally v. Allstate Ins. Co.,* 142 N.C. App. 680, 683, 544 S.E.2d 807, 809, *disc. rev. denied,* 353 N.C. 728, 552 S.E.2d 163 (2001). "Waiver by implication is not looked upon with favor by the court." *Chemical Bank v. Belk,* 41 N.C. App. 356, 366, 255 S.E.2d 421, 428, *cert. denied,* 298 N.C. 293, 259 S.E.2d 299 (1979). Here, defendant neither intentionally nor implicitly waived the "time is of the essence" clause in the contract nor agreed to extend the closing date until 30 September 2004. The trial court properly denied plaintiffs' motion for partial summary judgment. This assignment of error is overruled.

IV. Conclusion

The trial court properly granted defendant's motion for summary judgment on all claims and denied plaintiffs' motion for partial summary judgment. The language of the contract was clear and unambiguous and was properly interpreted as a matter of law. Defendant did not intentionally or implicitly waive the "time is of the essence" clause in the contract. The trial court properly found no genuine issues of material fact existed and that defendant was entitled to judgment as a matter of law on all issues. The trial court's order is affirmed.

Affirmed.

Judges McGEE and ELMORE concur.