S.N.R. MANAGEMENT CORP., Plaintiff-Appellant v. DANUBE PARTNERS 141, LLC, JAMES M. ADAMS, SR., ROSA BELVIN PROPERTIES, LLC, MILES C. BELVIN, HOWARD EUGENE BELVIN, and LEE McGREGOR, Defendants-Appellees

No. COA07-434

(Filed 15 April 2008)

**1. Unfair Trade Practices— sale of land for development— behavior not oppressive or egregious**

The trial court did not err by dismissing plaintiff's claim for unfair and deceptive trade practices arising from the sale of land for development. Defendants' conduct appears to be nothing more than competitive business activities.

**2. Conspiracy— civil—sale of property**

The trial court properly dismissed a claim of civil conspiracy arising from the sale of property where plaintiff did not allege an agreement between the defendants to commit the alleged wrongful overt acts and did not establish evidence sufficient to create more than a suspicion or conjecture.

**3. Fraud— sale of property for development—lack of particularity**

The trial court properly dismissed a claim of fraud against certain defendants arising from the sale of property for development where plaintiff did not allege its claims with sufficient particularity (the time and place of the representations were not alleged, the content of the representations was not stated with particularity, and an allegation that "proprietary information" was obtained is not sufficient).

**4. Fraud— sale of property—time and place of representations not alleged—content not stated with particularity**

The trial court properly dismissed a claim for fraud against a particular defendant arising from the sale of property for development where plaintiff did not allege the time or place where the representations occurred and did not state with particularity the content of the purported fraudulent representations.

**5. Fiduciary Relationship— sale of property—relationship not alleged**

The trial court properly dismissed a claim for breach of fiduciary duty against particular defendants arising from the sale of

property for development where plaintiff did not allege a legal or factual fiduciary relationship, and therefore did not allege the requisite elements necessary to state the cause of action.

**6. Wrongful Interference— tortious interference with contract—sale of property for development**

The trial court properly dismissed plaintiff's claims against some of the defendants for tortious interference with contract and tortious interference with prospective advantage arising from the sale of property for development. The parties were developers and competitors who both wanted the property, and defendants' actions were justified.

**7. Appeal and Error— preservation of issues—incorporation of argument by reference**

An issue was not appropriately preserved for appellate review where plaintiff incorporated by reference into the brief an argument from a prior brief that was two years old.

**8. Appeal and Error— rules violation—no dismissal**

An appeal was not dismissed for violation of N.C. Appellate Rule 28(b)(6) where plaintiff violated only one rule and the appellees and the Court could easily ascertain the appeal.

**9. Vendor and Purchaser— sale of real estate for development—time of the essence—contract amendments**

The trial court did not err by dismissing a breach of contract claim arising from the sale of real estate for development where the Rule 12(b)(6) motion to dismiss for failure to state a claim for relief was converted to a Rule 12(c) motion for judgment on the pleadings by consideration of a contract amendment appended to the answer. Although plaintiff contended that amendments to the contract waived the clause that time was of the essence, the subsequent amendments unequivocally incorporated by reference the entire contract, including that clause. It was undisputed that plaintiff did not close within the required time.

**10. Fiduciary Relationship— realtor—expired contract—development materials**

The trial court correctly dismissed a claim for breach of fiduciary duty against a realtor arising from the sale of land for development where the contract had expired, the realtor no longer owed any fiduciary duty to plaintiff, and did not breach any previously owed duty by requesting plaintiff's development ma-

terials. Furthermore, those materials did not belong to plaintiff after the contract became null and void.

Appeal by plaintiff from orders entered 30 December 2004 by Judge Kenneth C. Titus in Durham County Superior Court. Heard in the Court of Appeals 31 October 2007.

*Stark Law Group, PLLC, by Thomas H. Stark and Seth A. Neyhart, for plaintiff-appellant.*

*Williams Mullen Maupin Taylor, by Gilbert C. Laite, III, Kevin W. Benedict, and Heather E. Bridgers, for defendant-appellees Danube Partners 141, LLC, and James M. Adams, Sr.*

*Hedrick Murray Kennett Mauch & Rogers, PLLC, by Josiah S. Murray, III & John C. Rogers, III, for defendant-appellees Rosa Belvin Properties, LLC, Miles C. Belvin, and Howard Eugene Belvin.*

*Boxley, Bolton, Garber & Haywood, LLP, by Ronald H. Garber, for defendant-appellee Lee McGregor.*

CALABRIA, Judge.

S.N.R. Management Corporation ("plaintiff" or "purchaser") appeals from orders granting defendants' motions to dismiss and granting the motion to cancel the lis pendens of defendant Danube Partners, 141, LLC ("Danube"). We affirm.

On 17 April 2002, plaintiff executed a contract ("the contract" or "purchase contract") with Rosa Belvin Properties, LLC ("RBP" or "seller") and RBP's agents, Miles C. Belvin and Eugene Belvin (collectively, "the Belvin defendants") to purchase property for development. The contract named Leè McGregor Real Estate as one of the brokers entitled to a commission to be paid by the seller at closing. Lee McGregor ("McGregor") of Lee McGregor Real Estate served as plaintiff's real estate broker.

The property was located at the intersection of Danube Lane and Hebron Lane in Durham County, North Carolina. The purchase price for approximately 141.5 acres ("the property") was two million three hundred fifty-five thousand dollars ($2,355,000). The date for the original contract closing was contingent upon specified conditions stated as follows:

4. Provided all of the conditions set forth in Section 25 have been fulfilled to Purchaser's sole satisfaction, the closing of this transaction shall take place . . . on the earlier of (i) April 15, 2003 or (ii) thirty (30) days after the Property has been rezoned as set forth in Section 25(a). If the closing has not occurred by April 15, 2003 solely because the conditions set forth in Section 25 have not been fulfilled to Purchaser's sole satisfaction, this Contract shall thereupon become null, void and of no further effect, the parties shall be relieved of all obligations hereunder, the Deposit shall be returned to the Purchaser and Purchaser shall deliver to Seller copies of all studies performed by Seller on the Property including, but not limited to, all site plans, engineering reports and environmental studies performed after the Examination Period, at no cost to Seller.

. . . .

25. Closing under this Contract is contingent upon all of the following:

   a. Rezoning of the Property by the City/County of Durham to a zoning classification satisfactory to Purchaser and with zoning conditions reasonably satisfactory to Purchaser which permits Purchaser to construct single family dwellings, active adult housing, duplexes and fourplexes ("Rezoning"). Purchaser shall be responsible for all costs associated with the Rezoning. Seller shall cooperate fully with all rezoning efforts undertaken by Purchaser.

   b. Approval of Purchaser's site plan, to Purchaser's sole satisfaction, by the appropriate governmental authorities.

   c. No moratorium exists which limits the availability of public water and sewer service to the Property as Purchaser intends to develop it, which proposed development will be set forth on Purchaser's site plan.

Plaintiff and RBP extended the closing date on several occasions. RBP's attorney sent a letter to plaintiff stating plaintiff could exercise its options under sections 4 and 25 of the purchase contract. Plaintiff was unable to close on the designated date due to the possible existence of an endangered plant species ("the plant") on the property. Because of the plant, plaintiff sought to extend the closing

date, but RBP was unwilling to grant any further extensions beyond 30 January 2004.

Prior to the resolution of the issue regarding the plant, although plaintiff continued efforts to negotiate with RBP to extend the closing date, RBP sold the property to Danube on 26 March 2004. On 31 March 2004, RBP conveyed the property to Danube for the purchase price of $2,355,000. On 30 September 2004, plaintiff filed a complaint against Danube, Adams, McGregor, and the Belvin defendants. Plaintiff also filed a lis pendens.

Plaintiff states in the complaint that during the time the property was under contract, plaintiff sought to resell the property to various users and retail developers in order to commence marketing the property. Specifically, representatives of plaintiff discussed selling a portion of the property to James M. Adams, Sr. ("Adams") for development. Plaintiff alleges that Adams formed the limited liability company, Danube Partners 141, LLC, for the purpose of purchasing the property. Plaintiff gave certain proprietary information to Adams during these discussions in order to assist Adams in evaluating the purchase of the property. Plaintiff contends that after Adams received this information, and knew of the contract between plaintiff and RBP, Adams or one of his agents, contacted RBP and offered to purchase the property for the same price plaintiff agreed to pay, but without any of the contractual conditions. Therefore, plaintiff argues Adams intentionally induced RBP not to perform under its contract with plaintiff.

Plaintiff contends that subsequent to the sale of the property by RBP to Danube, representatives of plaintiff met with Adams and agreed upon a purchase price for the property. At the time of the meeting, plaintiff had a contract to sell a portion of the property to a third party, NRP Southeast Properties, LLC ("NRP"). Plaintiff avers that subsequent to the initial agreement between plaintiff and Adams, Danube or Adams contacted NRP and offered to sell the portion of the property to NRP at a lower price than the price stated in the contract between NRP and plaintiff. NRP then terminated its contract with plaintiff and negotiated to purchase the property from Danube.

Plaintiff alleges that in February or March 2004, McGregor also contacted Adams and furnished information he received from plaintiff to Adams without plaintiff's knowledge or consent. Plaintiff con-

tends that McGregor gave the materials to Adams in order to assist Adams in the purchase of the property, and that McGregor failed to notify plaintiff that Adams and RBP were negotiating the sale of the property.

The defendants responded to plaintiff's complaint with, *inter alia*, answers and motions to dismiss. Danube also filed a motion to cancel the lis pendens and counterclaimed for slander of title. On 30 December 2004, Judge Kenneth C. Titus in Durham County Superior Court granted defendants' motions to dismiss pursuant to North Carolina Rule of Civil Procedure 12(b)(6), as well as Danube's motion to cancel the lis pendens. The court also dismissed, *sua sponte*, all claims against the Belvin defendants pursuant to North Carolina Rule of Civil Procedure 12(c). On 27 January 2005, plaintiff gave notice of appeal. We dismissed the appeal as interlocutory due to Danube's outstanding counterclaim and remanded to the superior court.

On 31 July 2006, Danube dismissed its counterclaim with prejudice, and on 29 August 2006, plaintiff filed a second notice of appeal. We dismissed plaintiff's second appeal for violating the appellate rules. However, on 8 February 2007, we granted plaintiff's writ of certiorari pursuant to N.C.R. App. P. 21(a)(1) (2007), to review the court's judgment granting defendants' motions to dismiss and the judgment granting the motion to cancel the lis pendens.

On appeal, plaintiff argues the trial court erred by granting defendants' motions to dismiss. Specifically, plaintiff contends the trial court erred by granting defendants' motions to dismiss plaintiff's claims for: (1) breach of fiduciary duty; (2) unfair and deceptive trade practices; (3) fraud; (4) civil conspiracy; (5) breach of contract; (6) tortious interference with contract; and (7) tortious interference with prospective advantage. Plaintiff also contends the trial court erred by granting defendant Danube's motion to cancel the lis pendens.

I. Standard of review

Our standard of review on a motion to dismiss for failure to state a claim is *de novo* review. *Leary v. N.C. Forest Prods., Inc.*, 157 N.C. App. 396, 400, 580 S.E.2d 1, 4 (2003). The Court must consider "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Harris v. NCNB*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987) (citation omitted). Dismissal of a complaint is not proper "unless it

appears beyond a doubt that the plaintiff could not prove any set of facts to support his claim which would entitle him to relief." *Block v. County of Person*, 141 N.C. App. 273, 277-78, 540 S.E.2d 415, 419 (2000) (citation omitted). "The issue is not whether a plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support the claim." *Brown v. Lumbermens Mut. Casualty Co.*, 90 N.C. App. 464, 471, 369 S.E.2d 367, 371 (1988).

## II. Motions to dismiss concerning all defendants

We first address plaintiff's contention that the trial court erred by granting all defendants' motions to dismiss regarding plaintiff's claims for: (1) unfair and deceptive trade practices and (2) civil conspiracy.

## a. Unfair and deceptive practices

[1] "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. § 75-1.1(a) (2004). In order to establish a claim for unfair or deceptive acts or practices, a plaintiff must allege sufficient facts tending to show: "(1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001).

"[A]n unfair act or practice is one in which a party engages in conduct which amounts to an inequitable assertion of its power or position." *Southeastern Shelter Corp. v. BTU, Inc.*, 154 N.C. App. 321, 330, 572 S.E.2d 200, 206 (2002) (citation omitted). Furthermore, an act is unfair or deceptive under N.C. Gen. Stat. § 75-1.1 if it is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to customers." *Pierce v. Reichard*, 163 N.C. App. 294, 301, 593 S.E.2d 787, 791-92 (2004) (quotation omitted). In the case *sub judice*, the complaint states in pertinent part:

   a. McGregor obtained from [plaintiff] proprietary information relating to the Property under false pretenses;

    . . . .

   c. Adams and/or Danube received and misused proprietary information obtained by Adams to allow Adams and/or Danube to evaluate the purchase of the Property;

 d. Adams and/or Danube encouraged RBP and NRP to breach or to terminate their contracts with [plaintiff] without justification;

 e. Alternatively, Adams and/or Danube discouraged RBP from extending the contract with [plaintiff] without justification;

 f. Adams and/or Danube interfered with existing contracts between [plaintiff] and RBP and [plaintiff] and NRP;

 . . . .

 i. Defendants Gene Belvin, Clark Belvin and RBP represented to [plaintiff], even after the purchase and sale contract had been executed with Danube that they would be continuing to discuss an extension of the purchase agreement between [plaintiff] and RBP;

 j. Even though RBP had already closed on the Property; Gene Belvin, Clark Belvin and/or RBP left and impression [sic] with [plaintiff] that they would be further discussions [sic] about the extension[.]

All the defendants were in a business relationship with the plaintiff. The complaint alleges "McGregor obtained proprietary information," Adams "encouraged RBP and NRP to breach their contracts with [plaintiff]," and the Belvin defendants "left the impression with [plaintiff]" that there would be further discussions about the contract extension. These allegations do not show any defendant engaged in "conduct which amounts to an inequitable assertion" of their power over plaintiff. *Southeastern Shelter Corp.*, 154 N.C. App. at 330, 572 S.E.2d at 206. Furthermore, the complaint does not allege sufficient facts to show any defendant engaged in conduct that was so egregious in nature to result in "immoral, unethical, oppressive" behavior. *Pierce*, 163 N.C. App. at 301, 593 S.E.2d at 791. Rather, defendants' conduct appears to be nothing more than competitive business activities. This assignment of error is overruled.

b. Civil conspiracy

[2] "In order to state a claim for civil conspiracy, a complaint must allege 'a conspiracy, wrongful acts done by certain of the alleged conspirators, and injury.'" *Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 416, 537 S.E.2d 248, 265 (2000) (quoting *Henry v. Deen*, 310 N.C. 75, 87, 310 S.E.2d 326, 334 (1984)).

In civil conspiracy, recovery must be on the basis of sufficiently alleged wrongful overt acts. The charge of conspiracy itself does nothing more than associate the defendants together and perhaps liberalize the rules of evidence to the extent that under proper circumstances the acts and conduct of one might be admissible against all.

*Dove v. Harvey*, 168 N.C. App. 687, 690, 608 S.E.2d 798, 800 (2005) (quotation omitted), *disc. review denied*, 360 N.C. 289, 628 S.E.2d 249 (2006). Here, plaintiff's complaint alleges "[d]efendants maliciously conspired together and acted in concert, explicitly, impliedly or tacitly, to engage in the above-referenced fraudulent and otherwise wrongful acts with the intent to injure [plaintiff]."

A threshold requirement in any cause of action for damages caused by acts committed pursuant to a conspiracy *must be the showing that a conspiracy in fact existed*. The existence of a conspiracy requires proof of an agreement between two or more persons. Although civil liability for conspiracy may be established by circumstantial evidence, the evidence of the agreement must be sufficient to create more than a suspicion or conjecture in order to justify submission to a jury.

*Id.*, 168 N.C. App. at 690-91, 608 S.E.2d at 801 (emphasis supplied) (internal citations and quotations omitted). In the complaint, plaintiff asserted the existence of a conspiracy, yet plaintiff failed to allege that there was an agreement between the defendants to commit the alleged wrongful overt acts against plaintiff. Furthermore, plaintiff failed to establish evidence of the conspiracy that was "sufficient to create more than a suspicion or conjecture." *Id.*, 168 N.C. App. at 691, 608 S.E.2d at 801. As such, the trial court could not "justify submission to a jury" and properly dismissed plaintiff's claim for civil conspiracy. *Id.* This assignment of error is overruled.

III. Fraud

[3] Plaintiff next asserts that the trial court erred by granting Danube, Adams, and the Belvin defendants' motions to dismiss plaintiff's fraud claim.

"The elements of fraud are: (1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *McGahren v. Saenger*, 118 N.C. App. 649, 654, 456 S.E.2d 852, 855 (1995) (internal quotation marks

omitted) (citation omitted). In pleading a claim of fraud, "the circumstances constituting fraud . . . shall be stated with particularity." N.C. Gen. Stat. § 1A-1, Rule 9(b) (2004). Moreover, "in pleading actual fraud the particularity requirement is met by alleging *time, place* and *content of the fraudulent representation,* identity of the person making the representation and what was obtained as a result of the fraudulent acts or representations." *Terry v. Terry,* 302 N.C. 77, 85, 273 S.E.2d 674, 678 (1981) (emphasis supplied).

a. Adams and Danube

In the case *sub judice,* plaintiff's pertinent claims for fraud against Adams and Danube are set out in the complaint as follows:

92. Adams and/or Danube induced [plaintiff] to act to its detriment by knowingly making the following false representations and/or material omissions:

   a. Adams and/or Danube obtained proprietary information from [plaintiff] for the purpose of evaluating [plaintiff's] due diligence and using such information in its negotiations with RBP, Clark Belvin, and/or Gene Belvin, however, Adams and/or Danube did not ever mention to [plaintiff] that it was interested in or involved in negotiations to purchase the [p]roperty;

   b. Adams and/or Danube took the due diligence information with an understanding that the information would be used only for the evaluation of purchasing part of the [p]roperty from [plaintiff];

   c. Adams and/or Danube never told [plaintiff] that it was in negotiations with RBP, Clark Belvin and/or Gene Belvin for purchasing the [p]roperty;

   d. After the sale of the [p]roperty from RBP to Danube, Adams and/or Danube falsely represented to [plaintiff] that Danube would sell a portion of the [p]roperty to [plaintiff][.].

   . . . .

93. The representations and/or material omissions of Adams and/or Danube to [plaintiff] were false when made and the material omissions of Adams and/or Danube when made tended to leave a false impression of the truth.

94. The false representations of Adams and/or Danube as alleged herein were made with the knowledge that they were false, or with reckless disregard for their truthfulness, and with the intention that [plaintiff] would be induced to act, or not act, and rely on those representations.

95. The material omissions of Adams and/or Danube as alleged herein were made to intentionally create the false impression, through omission, of the truth or were made with a reckless disregard for the truth and with the intention that [plaintiff] would be induced to act, or not act, and rely on the material omissions.

96. In reasonable reliance on the representations and/or material omissions of Adams and/or Danube, [plaintiff] entrusted proprietary information with Adams and/or Danube, withheld legal action to enforce its rights and/or continued negotiating with Adams and/or Danube.

97. [Plaintiff] relied to its detriment upon the intentional omissions and false statements of Adams and/or Danube.

98. As a direct and proximate consequence of the fraudulent acts of Adams and Danube, [plaintiff] has suffered damages in an amount in excess of Ten Thousand Dollars.

In the complaint, plaintiff does not allege the time nor place where Adams' and Danube's purported fraudulent representations to plaintiff occurred. Plaintiff's allegations do not state with particularity the content of Adams' and Danube's purported fraudulent representations. Furthermore, plaintiff only alleges that "Adams and/or Danube obtained *proprietary information* from [plaintiff]." The term "proprietary information" does not state with sufficient particularity "what was obtained as a result of the fraudulent acts or representations." *Id.* Therefore, in the complaint, plaintiff does not allege its claims for fraud with the requisite "particularity" needed to withstand Adams' and Danube's 12(b)(6) motions to dismiss. *Id.* This assignment of error is overruled.

b. Belvin defendants

[4] Plaintiff's pertinent claims for fraud against the Belvin defendants are set out in the complaint as follows:

81. RBP, Clark Belvin and/or Gene Belvin induced SNR to act to its detriment by knowingly making the following false representations and/or material omissions:

    a. RBP, Clark Belvin and/or Gene Belvin repeatedly indicated to SNR that matters with respect to closing on the Property would be worked out;

    b. RBP, Clark Belvin and/or Gene Belvin continued negotiations for a closing date on the Property when in fact, RBP, Clark Belvin and/or Gene Belvin were negotiating a purchase price and closing on the Property with Adams and/or Danube;

    c. RBP, Clark Belvin and/or Gene Belvin failed to mention to SNR or its agents that is [sic] was in negotiations with Adams and/or Danube;

    d. Even after the closing for the sale of the Property to Danube had been executed, but before the documents associated with the transaction were recorded, RBP, Clark Belvin and/or Gene Belvin gave SNR the indication that matters with respect to closing on the Property would be worked out;

    e. After closing occurred, RBP, Clark Belvin and/or Gene Belvin omitted telling SNR that closing had already occurred;

    f. After closing occurred, RBP, Clark Belvin and/or Gene Belvin made statements intending to leave with SNR the impression that RBP would continue to negotiate with SNR; and

    . . . .

82. The representations of RBP, Clark Belvin and/or Gene Belvin to SNR were false when made and the material omissions of RBP, Clark Belvin and/or Gene Belvin when made tended to leave a false impression of the truth.

Here, plaintiff does not allege the time nor place where the Belvin defendants' purported fraudulent representations to plaintiff and material omissions occurred. Plaintiff's allegations state defendants "continued negotiations" and defendants "repeatedly indicated to [plaintiff] that matters with respect to closing on the Property would be worked out." These allegations do not state with particularity the content of defendants' purported fraudulent representations. We conclude plaintiff fails to allege its claims for fraud against the Belvin defendants with the requisite "particularity" needed to withstand

defendants' 12(b)(6) motion to dismiss. *Id.* This assignment of error is overruled.

## IV. Danube and Adams

Plaintiff argues that the trial court erred by granting the motions to dismiss as to defendants Danube and Adams. Specifically, plaintiff contends the trial court erred in granting their motions to dismiss regarding plaintiff's claims for: (1) breach of fiduciary duty; (2) tortious interference with contract between plaintiff and RBP; (3) tortious interference with prospective advantage; and (4) tortious interference with contract between plaintiff and NRP.

### a. Breach of fiduciary duty

[5] "[I]t is fundamental that a fiduciary relationship must exist between the parties in order for a breach of fiduciary duty to occur." *Branch v. High Rock Lake Realty, Inc.*, 151 N.C. App. 244, 251, 565 S.E.2d 248, 253 (2002) (citation omitted). A fiduciary relationship "exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." *Stone v. McClam*, 42 N.C. App. 393, 401, 257 S.E.2d 78, 83 (1979) (quotation omitted).

> Generally, in North Carolina . . . there are two types of fiduciary relationships: (1) those that arise from "legal relations such as attorney and client, broker and client . . . partners, principal and agent, trustee and cestui que trust," and (2) those that exist "as a fact, in which there is confidence reposed on one side, and the resulting superiority and influence on the other."

*Rhone-Poulenc Agro S.A. v. Monsanto Co.*, 73 F. Supp. 2d 540, 546 (M.D.N.C. 1999) (citations and quotations omitted). "Only when one party figuratively holds all the cards—all the financial power or technical information, for example—have North Carolina courts found that the special circumstance of a fiduciary relationship has arisen." *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 348 (4th Cir. 1998) (internal quotation marks and citations omitted).

In the case *sub judice*, plaintiff does not allege in the complaint that plaintiff and Adams have a fiduciary relationship arising from a "legal relation[]." *Rhone-Poulenc*, 73 F. Supp. 2d at 546. Therefore, we must determine whether plaintiff and Adams have a fiduciary relationship existing in fact. Plaintiff does not allege in its complaint any facts that would show Adams had the "amount of control and domi-

nation required to form a fiduciary relationship outside that of the normal relationships recognized by law." *Id.* Thus, plaintiff's complaint does not allege the requisite elements necessary to state a cause of action for breach of fiduciary duty. This assignment of error is overruled.

b.　Interference with contract and prospective advantage

[6] In the complaint, plaintiff alleges three claims for tortious interference against Adams and Danube. First, plaintiff alleges a claim for tortious interference with contract between plaintiff and RBP. Second, plaintiff contends in the alternative tortious interference with prospective advantage between plaintiff and RBP. Specifically, plaintiff contends that Adams and Danube induced RBP not to grant plaintiff an extension of plaintiff's existing contract with RBP. Third, plaintiff asserts that it had a contract to convey a portion of the property to a third party, NRP, and that after Danube took title to the property, Adams or Danube induced NRP not to honor its contract with plaintiff, but to instead contract directly with Adams or Danube.

A claim for tortious interference of contract has five elements:

(1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts *without justification*; (5) resulting in actual damage to plaintiff.

*United Laboratories, Inc. v. Kuykendall,* 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988) (emphasis supplied). "Generally speaking, interference with contract is justified if it is motivated by a legitimate business purpose, as when the plaintiff and the defendant, an outsider, are competitors." *Embree Construction Group v. Rafcor, Inc.,* 330 N.C. 487, 498, 411 S.E.2d 916, 924 (1992).

In the instant case, plaintiff's complaint alleges that plaintiff entered into a contract with RBP to purchase property for development. The complaint further alleges:

27. While the Property was under contract, [plaintiff] discussed the property with various end users and retail developers in order to commence marketing the Property.

28. Specifically, representatives of [plaintiff] discussed the Property with the Defendant Adams and the discussion

S.N.R. MGMT. CORP. v. DANUBE PARTNERS 141, LLC

[189 N.C. App. 601 (2008)]

focused on the sale to Adams by [plaintiff] of a portion of the Property for development.

. . . .

75. As a realtor, a developer and/or a recipient of proprietary information, Adams understood that he owed a fiduciary duty to [plaintiff] . . . .

Therefore, looking at the face of the complaint, it appears plaintiff and Danube (including Adams) were developers and both wanted to purchase the property for development. We conclude plaintiff and Danube (including Adams) were competitors and as such, Danube and Adams' actions were justified. Because Danube and Adams' actions were justified, plaintiff fails to allege the requisite elements necessary to state a claim for relief regarding plaintiff's two tortious interference with contract claims. These assignments of error are overruled.

In order for a plaintiff to be successful on a claim of tortious interference with prospective advantage, plaintiff "must show that [d]efendants induced a third party to refrain from entering into a contract with [p]laintiff *without justification.* Additionally, [p]laintiff must show that the contract would have ensued but for [d]efendants' interference." *Holroyd v. Montgomery Cty.*, 167 N.C. App. 539, 546, 606 S.E.2d 353, 358 (2004) (internal quotation marks omitted) (internal citations and quotations omitted).

We previously stated plaintiff and Danube (including Adams) were competitors in developing property. Thus, Danube and Adams' actions were justified. Because Danube and Adams' actions were justified, plaintiff fails to allege the requisite elements necessary to state a claim for relief regarding plaintiff's tortious interference with prospective advantage. This assignment of error is overruled.

c.  Lis Pendens

[7] Finally, with respect to defendants Danube and Adams, plaintiff contends the trial court erred by granting defendant Danube's motion to cancel the lis pendens.

However, before turning to a consideration of this issue, we must first address a preliminary matter. In plaintiff's new brief filed before this Court, plaintiff's attorneys included a statement incorporating by reference into the new brief the argument from a previous brief filed before this Court two years ago, rather than a new argument. Rule

28(b)(6) of our Rules of Appellate Procedure states in relevant part, "Assignments of error not set out in the appellant's brief, or in support of which *no reason or argument is stated or authority cited,* will be taken as abandoned." N.C.R. App. P. 28(b)(6) (2007) (emphasis supplied); *see also Fortner v. J.K. Holding Co.,* 319 N.C. 640, 357 S.E.2d 167 (1987) (Plaintiff's attorney's incorporating by reference into the new brief filed before the North Carolina Supreme Court the argument contained in plaintiff's brief filed before the Court of Appeals did not properly follow the rules of appellate procedure.). By including the same argument from a previous brief filed before this Court two years ago, plaintiff, in the new brief, did not appropriately preserve this issue for appellate review. Thus, we need not address this assignment of error.

## V.   Rosa Belvin Properties, LLC, Miles C. Belvin and Howard Eugene Belvin

[8] Plaintiff next asserts that the trial court erred by granting the motion to dismiss as to the Belvin defendants. Specifically, plaintiff argues the trial court erred in granting the Belvin defendants' motion to dismiss regarding plaintiff's claims for breach of contract. Plaintiff avers the trial court granted the Belvin defendants' motion to dismiss under both Rule 12(b)(6) and Rule 12(c) of the North Carolina Rules of Civil Procedure.

Plaintiff contends that when the court granted the Belvin defendants' motion to dismiss, the court acted *sua sponte,* and specifically considered exhibits appended to the Belvin defendants' answer. Plaintiff avers that because the trial court considered exhibits appended to the Belvin defendants' answer, the trial court, *sua sponte,* converted the Rule 12(b)(6) motion to a Rule 12(c) motion. Therefore, plaintiff contends the issue on appeal is whether the trial court's dismissal of plaintiff's breach of contract claim is correct under the standard of review for granting a motion for judgment on the pleadings pursuant to Rule 12(c). The Belvin defendants argue that plaintiff's appeal should be dismissed for failure to comply with Rule 28(b)(6) of the North Carolina Rules of Appellate Procedure. We disagree. Rule 28(b)(6) of our Rules of Appellate Procedure provides, in relevant part, that an appellate brief shall contain:

> An argument, to contain the contentions of the appellant with respect to each question presented. Each question shall be separately stated. Immediately following each question shall be a reference to the assignments of error pertinent to the question, iden-

tified by their numbers and by the pages at which they appear in the printed record on appeal.

N.C.R. App. P. 28(b)(6).

In the case *sub judice*, in plaintiff's appellate brief, the assignment of error pertaining to the court's consideration of evidence outside plaintiff's complaint under the question presented regarding this issue is not referenced. "The Rules of Appellate Procedure are mandatory, and failure to follow them will subject an appeal to dismissal." *Groves v. Community Hous. Corp.*, 144 N.C. App. 79, 82, 548 S.E.2d 535, 537 (2001) (citations omitted). However, "[t]his Court has held that when a litigant exercises substantial compliance with the appellate rules, the appeal may not be dismissed for a *technical violation* of the rules." *Spencer v. Spencer*, 156 N.C. App. 1, 8, 575 S.E.2d 780, 785 (2003) (emphasis supplied) (internal quotation marks and citations omitted). One of the purposes of our Appellate Rules is to provide the appellee and the Court "notice of the basis upon which an appellate court might rule." *Viar v. N.C. Dep't of Transp.*, 359 N.C. 400, 402, 610 S.E.2d 360, 361 (2005); *see generally Selwyn Village Homeowners Ass'n v. Cline & Co., Inc.*, 186 N.C. App. 645, 651 S.E.2d 909 (November 6, 2007) (No. COA07-116).

Here, plaintiff lists only nine assignments of error in the record. Therefore, the appellees and this Court can easily ascertain the appeal. Furthermore, since plaintiff violated only one appellate rule, we find no compelling reason to dismiss this issue and exercise our discretion to reach the merits regarding the breach of contract issue.

**[9]** We also note that the trial court acted *sua sponte* in granting the Belvin defendants' motion pursuant to Rule 12(c). This Court has determined a trial court may apply Rule 12(c) *sua sponte. See Terrell v. Lawyers Mut. Liab. Ins. Co.*, 131 N.C. App. 655, 660, 507 S.E.2d 923, 926 (1998) ("the trial court could have applied Rule 12(c) *sua sponte.*").

To determine whether the trial court erred in granting judgment on the pleadings under Rule 12(c) of the North Carolina Rules of Civil Procedure in favor of the Belvin defendants, we apply *de novo* review. *Toomer v. Branch Banking & Tr. Co.*, 171 N.C. App. 58, 66, 614 S.E.2d 328, 335, *disc. rev. denied*, 360 N.C. 78, 623 S.E.2d 263 (2005). "Judgment on the pleadings, pursuant to Rule 12(c), is appropriate when all the material allegations of fact are admitted in the pleadings and only questions of law remain." *Groves v. Community Hous. Corp.*, 144 N.C. App. 79, 87, 548 S.E.2d 535, 540 (2001) (internal quo-

tation marks omitted) (internal citations and quotations omitted). "Judgments on the pleadings are disfavored in law, and the trial court must view the facts and permissible inferences in the light most favorable to the non-moving party." *Id.* (citations omitted). "A motion for judgment on the pleadings pursuant to . . . Rule 12(c), should not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Toomer*, 171 N.C. App. at 66, 614 S.E.2d at 334 (internal quotation marks omitted) (citations omitted).

In the instant case, on 17 April 2002, plaintiff signed the contract with the Belvin defendants to purchase property for development. In section 19, the contract stated, "Time is of the essence in completing every item called for by this Contract." Although the contract specified several conditions for closing, the parties subsequently extended the closing date several times by written amendments. The third and final written amendment extended the closing until 29 January 2004 ("third amendment"). On 22 January 2004, the Belvin defendants' counsel sent a letter notifying the plaintiff that the Belvin defendants would not grant further extensions to close beyond 30 January 2004. On 4 February 2004, plaintiff's counsel sent a letter to the Belvin defendants' counsel requesting additional time for plaintiff to close on the property. On 10 February 2004, the Belvin defendants' counsel sent a letter to plaintiff's counsel declaring the Belvin defendants were "unwilling to enter into any further extension of the time for closing." On 31 March 2004, RBP sold and conveyed the property to Danube.

In granting the Belvin defendants' motion to dismiss, the trial court considered the third amendment which was appended to the Belvin defendants' answer and effectively converted the Belvin defendants' Rule 12(b)(6) motion to dismiss into a Rule 12(c) motion for judgment on the pleadings. The Belvin defendants argue that the clause, "[t]ime is of the essence," in section 19 of the original contract dated 17 April 2002 was saved by the clause in the subsequent written amendments declaring "all terms and conditions of the Contract shall remain in full force and effect." Therefore, the "[t]ime is of the essence" clause was in effect when the parties agreed to a third amendment. Since plaintiff did not close by the required closing date, the contract had expired.

Plaintiff argues the subsequent written amendments to the original 17 April 2002 contract amended the closing date and thus, logically waived the "[t]ime is of the essence" clause regarding the clos-

ing date. Since the "[t]ime is of the essence" clause was waived, plaintiff had a reasonable time to close. We disagree.

In *Fairview Developers, Inc. v. Miller*, 187 N.C. App. 168, 652 S.E.2d 365 (2007), this Court determined whether the defendant waived the "time is of the essence" clause stated in the parties' contract. The parties executed a contract for the sale of real property which included an addendum stating: "Time is of the essence as to the terms of this contract." *Id.*, 187 N.C. App. at 169, 652 S.E.2d at 366. The defendant subsequently agreed to allow plaintiff to close on a date two days after the date specified in the contract. *Id.*, 187 N.C. App. at 169, 652 S.E.2d at 366. When defendant refused to extend the closing date any further, plaintiff sued. *Id.*, 187 N.C. App. at 170, 652 S.E.2d at 367. On appeal, plaintiff argued that "defendant waived the contract's 'time is of the essence clause' through her subsequent actions on and after [the original closing date]. *Id.*, 187 N.C. App. at 172, 652 S.E.2d at 368. This Court disagreed:

> Waiver is always based upon an express or implied agreement. There must always be an intention to relinquish a right, advantage or benefit. . . . 'There can be no waiver unless it is intended by one party and so understood by the other[.]' . . . [Defendant] agreed to close . . . two days after the closing should have occurred. Defendant's waiver, if any, is limited to the two additional days she allowed for the closing to occur. Defendant did not waive the 'time is of the essence' clause.

*Id.*, 187 N.C. App. at 172-73, 652 S.E.2d at 368 (citing *Patterson v. Patterson*, 137 N.C. App. 653, 667, 529 S.E.2d 484, 492 (2000); and quoting *Klein v. Avemco Ins. Co.*, 289 N.C. 63, 68, 220 S.E.2d 595, 599 (1975) (internal citation omitted)).

In the instant case, each of the three written amendments restated the warning in section 4, that if closing did not occur by the amended date "this Contract shall thereupon become null, void and of no further effect[.]" In addition, each of the amendments expressly stated that:

> Except as amended herein, all terms and conditions of the Contract shall remain in full force and effect.

Thus, the amendments changed only the latest possible closing date, but retained all other provisions of the contract, including the contract's "[t]ime is of the essence" clause. Moreover, since the

amendments retained the other provisions of the contract, defendant did not "show an intention to relinquish" the "[t]ime is of the essence clause" in executing the amendments. *Id.*, 187 N.C. App. at 172-73, 652 S.E.2d at 368.

"Here, the 'time is of the essence' provision was written into the contract as an additional provision and was acknowledged by both parties. A court must construe a contract as it is written and give effect to every part and provision whenever possible." *Gaskill v. Jennette Enters., Inc.*, 147 N.C. App. 138, 140, 554 S.E.2d 10, 12 (2001) (citing *Marcoin, Inc. v. McDaniel*, 70 N.C. App. 498, 504, 320 S.E.2d 892, 897 (1984)). Further, in interpreting a contract, "the common or normal meaning of language will be given to the words of a contract unless the circumstances show that in a particular case a special meaning should be attached to it." *Marcoin*, 70 N.C. App. at 504, 320 S.E.2d at 897 (citations omitted).

Therefore, we conclude the subsequent written amendments to the contract unequivocally incorporated by reference the entire contract, including the "[t]ime is of the essence" clause. It is undisputed that plaintiff did not close within the time frame set forth in section 4 of the contract as amended. Since the contract contained a "[t]ime is of the essence" provision and plaintiff did not close within the required time frame, plaintiff's claim for breach of contract must fail. This assignment of error is overruled.

## VI. Lee McGregor

[10] Plaintiff's final argument is that the trial court erred by granting McGregor's motion to dismiss plaintiff's claim for breach of fiduciary duty. "[A] broker representing a purchaser or seller in the purchase or sale of property owes a fiduciary duty to his client based upon the agency relationship itself." *Kim v. Professional Business Brokers*, 74 N.C. App. 48, 51-52, 328 S.E.2d 296, 299 (1985) (citations omitted).

In the case *sub judice*, plaintiff's contract with RBP expired on 30 January 2004 because plaintiff did not complete the enumerated conditions under sections 4 and 25 of the contract. Plaintiff's complaint alleges, *inter alia*, that:

> 59. [Plaintiff] was represented in its contractual transaction with RBP by Defendant McGregor, whom [plaintiff] is informed and believes is a realtor duly licensed as such by the State of North Carolina.

60. In February or March of 2004, McGregor contacted counsel for [plaintiff] and in his capacity as realtor for [plaintiff], requested a copy of all due diligence and development materials compiled by [plaintiff] in relation to the [p]roperty.

61. Counsel for [plaintiff], after confirming that McGregor was still acting as the realtor for [plaintiff], complied with McGregor's request and forwarded the materials to McGregor.

62. [Plaintiff] is informed and believes . . . that McGregor furnished the information received from [plaintiff] to Adams, Adams' agents, or Danube.

63. At all times relevant herein, McGregor was employed as the realtor for [plaintiff]; as such, he owed a fiduciary duty to [plaintiff].

However, since RBP refused to extend the deadline for closing beyond 30 January 2004, it appears McGregor no longer owed any fiduciary duty to plaintiff regarding the sale of the property after 30 January 2004. As such, McGregor did not breach any fiduciary duty previously owed to plaintiff when he contacted plaintiff's attorney in February or March 2004 requesting plaintiff's development materials regarding the property.

Furthermore, the development materials McGregor requested from plaintiff's attorney in February or March 2004 did not belong to the plaintiff. On 23 September 2003, plaintiff and RBP executed a third amendment to the contract which stated in relevant part:

If the closing has not occurred by January 29, 2004 solely because the conditions set forth in Section 25 have not been fulfilled to Purchaser's sole satisfaction, this Contract shall thereupon become null, void and of no further effect, the parties shall be relieved of all obligations hereunder, the Deposit shall be returned to the Purchaser and Purchaser shall deliver to Seller copies of all studies performed by Seller on the Property including, but not limited to, all site plans, engineering reports and environmental studies performed after the Examination Period, at no cost to Seller.

This same provision that RBP would be the owner of any materials completed by plaintiff in relation to the property if the contract became null and void also was in the original contract between plaintiff and RBP executed on 17 April 2002. Thus, any materials com-

piled by plaintiff in relation to the property belonged to RBP after 29 January 2004 pursuant to the terms of the contract. Therefore, McGregor was free to request the materials from plaintiff's attorney and he did not breach a fiduciary duty owed to plaintiff as a result of their previous relationship. This assignment of error is overruled.

VII.　Conclusion

In conclusion, the judgment of the trial court is affirmed as to plaintiff's claims for unfair and deceptive practices; civil conspiracy; fraud; breach of contract; breach of fiduciary duty regarding Danube, Adams, and McGregor; tortious interference with contract; tortious interference with prospective advantage; and canceling the lis pendens.

Affirmed.

Judges STEPHENS and ARROWOOD concur.