Hawes v. Vandoros, 2013 NCBC 31.

STATE OF NORTH CAROLINA                    IN THE GENERAL COURT OF JUSTICE
                                               SUPERIOR COURT DIVISION
COUNTY OF GUILFORD                                   10 CVS 3412

| | | |
|---|---|---|
| WARREN J. HAWES, MARY HAWES, WILLIAM R. SCHERMERHORN, CHRISTINE L. SCHERMERHORN, MICHAEL B. SCHERMERHORN, ANDREA SCHERMERHORN and THOMAS SCHERMERHORN, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | **ORDER ON PLAINTIFFS' RENEWED AND AMENDED MOTION FOR SUMMARY JUDGMENT/PARTIAL SUMMARY JUDGMENT** |
| v. | ) ) ) | |
| GEORGE L. VANDOROS, EFFTHEMIA VANDOROS, EFFIE, LLC, CHRYSSOULA BAKATSIAS and THEODORE N. BAKATSIAS, | ) ) ) ) ) | |
| Defendants. | ) ) | |

{1}     THIS MATTER is before the court on Plaintiffs' Renewed and Amended Motion for Summary Judgment/Partial Summary Judgment ("Motion"). For the reasons stated below, the Motion is GRANTED in part and DENIED in part.

> *Rossabi Black Slaughter, P.A. by Amiel J. Rossabi and Gavin J. Reardon for Plaintiffs.*
>
> *Vernon, Vernon, Wooten, Brown, Andrews, & Garrett, P.A. by Wiley P. Wooten and Benjamin D. Overby for Defendants George L. Vandoros, Effthemia Vandoros, and Effie, LLC.*
>
> *Alexander Ralston, Speckhard & Speckhard, LLP by Stanley E. Speckhard for Defendants Chryssoula Bakatsias and Theodore Bakatsias.*

Gale, Judge.

# I.  PARTIES

{2}    Warren J. Hawes and his wife Mary Hawes are citizens and residents of Jefferson Parish, Louisiana.  (Am. Compl. ¶¶ 1–2.)

{3}    William R. Schermerhorn and his wife Christine L. Schermerhorn are citizens and residents of Guilford County, North Carolina.  (Am. Compl. ¶¶ 3–4.)

{4}    Michael B. Schermerhorn and his wife Andrea Schermerhorn are citizens and residents of Baltimore County, Maryland.  (Am. Compl. ¶¶ 5–6.)

{5}    Thomas Schermerhorn is a citizen and resident of Alamance County, North Carolina.  (Am. Compl. ¶ 7.)

{6}    George Vandoros and his wife Effthemia Vandoros ("Effie Vandoros") are citizens and residents of Brunswick County, North Carolina.  (Am. Compl. ¶¶ 8–9; Answer to Am. Compl., Countercl. and Cross-cl. [hereinafter "Vandoros Answer"] ¶¶ 8–9.)

{7}    Effie, LLC was a North Carolina Limited Liability Company solely owned by Effie Vandoros, dissolved effective December 31, 2009.  (Am. Compl. ¶ 10; Vandoros Answer ¶ 10.)

{8}    Theodore N. Bakatsias and his wife Chryssoula Bakatsias are citizens and residents of Durham County, North Carolina (together, the "Bakatsias Defendants").  (Am. Compl. ¶¶ 11–12.)

{9}    Scherm Investments, LLC ("Scherm Investments") is a Limited Liability Company.  William R. Schermerhorn, Christine L. Schermerhorn, Michael B. Schermerhorn, Andrea Schermerhorn, and Thomas Schermerhorn are the members of Scherm Investments.

## II.    INTRODUCTION

{10}    This case arises out of a failed real estate investment originally entered into among Warren J. Hawes, Mary Hawes, George Vandoros, Effie Vandoros, the Bakatsias Defendants, and Scherm Investments (together, the "Investing Parties") in June 2006.  (Am. Compl. ¶¶ 24–26.)  After refinancing the properties in early 2007, on March 30, 2007 the Parties entered into two agreements providing for the financial obligations of the Parties in relation to the two investment properties; the "Lee Street Contribution Agreement" and the "Pender Street Contribution Agreement" (together, the "Contribution Agreements").  (Am. Compl. ¶¶ 33–54.)  Defendants' obligations pursuant to those Contribution Agreements are the subject of the present Motion.

## III.    PROCEDURAL BACKGROUND

{11}    Plaintiffs filed suit in Guilford County on February 1, 2010.  On March 12, 2010 the case was designated a mandatory complex business case by Order of Chief Justice Sarah Parker and assigned to Judge Ben F. Tennille, and upon his retirement in early 2011, to the undersigned.  Plaintiffs filed their Amended Complaint on October 28, 2010 alleging claims for (1) breach of the Pender Street Contribution Agreement against George Vandoros, Theodore Bakatsias, and Chryssoula Bakatsias; (2) breach of the Lee Street Contribution Agreement against George Vandoros, Theodore Bakatsias, and Chryssoula Bakatsias; (3) breach of fiduciary duty against George Vandoros; (4) conversion against George Vandoros, Effie Vandoros, and Effie, LLC; and (5) violation of the Uniform Fraudulent Transfer Act against George Vandoros, Effie Vandoros, and Effie, LLC.

{12}    Plaintiffs filed a Motion for Summary Judgment/Partial Summary Judgment on December 8, 2011.  On March 27, 2012 the Bakatsias Defendants filed for bankruptcy, thereby staying matters in this case.  (Renewed and Am. Mot. for Summ. J./Partial Summ. J. [hereinafter "Mot."] 2.)  The Bakatsias Defendants'

bankruptcy case was dismissed on November 23, 2012, and Plaintiffs filed their Renewed and Amended Motion for Summary Judgment on March 1, 2013. (Mot. Ex. 1.) Plaintiffs' Motion seeks summary adjudication only of their First and Second claims.

{13} A consent judgment as to George Vandoros' liability pursuant to the Contribution Agreements was entered on June 3, 2013. Consequently, this Order will only address Plaintiffs' Motion against the Bakatsias Defendants.

{14} The Motion has been fully briefed, the court heard oral argument on April 30, 2013, and the matter is ripe for disposition.

## IV. FACTUAL BACKGROUND

{15} The court does not make findings of fact when ruling on a motion for summary judgment, but examines whether the record establishes uncontested facts or an absence of necessary facts adequate to demonstrate that the claims should be resolved as a matter of law without the necessity of trial proceedings. *See Hyde Ins. Agency, Inc. v. Dixie Leasing Corp.*, 26 N.C. App. 138, 215 S.E.2d 162 (1975). The court believes the following facts are either uncontested, or, if contested, are construed in favor of Defendants who oppose the Motion.

{16} In June 2006, the Investing Parties purchased two residential properties as investments: 11 Lee Street, Ocean Isle Beach, North Carolina ("Lee Street"); and 13 Pender Street, Ocean Isle Beach, North Carolina ("Pender Street"; collectively, "the properties"). (Am. Compl. ¶¶ 24–26.) The Investing Parties owned the properties as tenants in common, with each of the married couples owning a ¼ interest as tenants in the entirety. (Am. Compl. ¶¶ 24–25.)

{17} In late 2006 or early 2007, the Investing Parties refinanced the properties. (Am. Compl. ¶¶ 33–37.) In connection with that refinancing, the Parties executed a deed dated March 20, 2007 ("March 20, 2007 Deed") which set the ownership of the properties as follows:

| Warren J. Hawes | 1/12th |
| Mary Hawes | 1/12th |
| William R. Schermerhorn | 1/12th |
| Christine L. Schermerhorn | 1/12th |
| George Vandoros | 1/12th |
| Effthemia Vandoros | 1/12th |
| Theodore N. Bakatsias | 1/12th |
| Chryssoula Bakatsias | 1/12th |
| Michael B. Schermerhorn | 1/12th |
| Andrea Schermerhorn | 1/12th |
| Thomas Schermerhorn | 1/6th |

(Am. Compl. ¶ 41.)

{18}     On March 30, 2007, the following documents were executed with RBC Bank in connection with the refinancing: (1) a $980,000.00 Note secured by a Deed of Trust on the Pender Street property (Am. Compl. ¶¶ 42–44); (2) a $245,000.00 Equity Line of Credit secured by a Deed of Trust on the Pender Street property (Am. Compl. ¶ 46); (3) a $980,000.00 Note secured by a Deed of Trust on the Lee Street property (Am. Compl. ¶¶ 47–49); and (4) a $245,000.00 Equity Line of Credit secured by a Deed of Trust on the Lee Street property (the "Loans").  (Am. Compl. ¶¶ 50–52.)

{19}     Also on March 30, 2007, the individual Parties executed the Lee Street and Pender Street Contribution Agreements.  Both Contribution Agreements have the following provisions:

1.  Proration of Obligations.  Each of the Co-Owners hereby agrees that, among themselves, they shall each bear responsibility for that portion of each of the Obligations which is equal to their respective undivided ownership interests in the Property.

2.  Requirement of Payment Prior to Contribution.  The right to contribution provided herein shall exist only upon payment by a Co-Owner of an amount of an Obligation which exceeds the portion of such Obligation which is equal to such Co-Owner's undivided ownership interest in the Property.

3.  Manner of Contribution.  Upon any Co-Owner making a payment of an Obligation in excess of such party's pro-rata share thereof, the

party making such payment shall issue a notice (the "Notice") to each of the other Co-Owners (each a "Contributing Co-Owner") setting forth the date of the payment made and the amount of the contribution due by each Contributing Co-Owner, as well as the due date for the payment of such contribution which shall not be less than ten (10) days from the date of the Notice and not more than thirty (30) days from the date the payment is made. . . . If a Contributing Co-Owner's obligation to contribute toward payment of an Obligation pursuant to this paragraph shall not be paid in full by the date set forth in the Notice, then (i) the amount that such Contributing Co-Owner is obligated to contribute pursuant to this paragraph and that remains unpaid as of the date set forth in the Notice shall bear interest at the rate of eight percent (8.0%) per annum, compounded monthly, beginning as of the day following the date set forth in the Notice, until paid in full, and (ii) the Co-Owner issuing the Notice may employ an attorney to enforce the obligation of the Contributing Co-Owner under this paragraph and such Contributing Co-Owner agrees to pay reasonable attorney fees, plus all other reasonable expenses incurred by the Co-Owner issuing the Notice, in exercising such Co-Owner's rights and remedies under this paragraph.

. . .

12. <u>Notices</u>. Any and all notices, designations . . . offers, acceptances or any other communications provided for herein shall be given in writing and shall be signed by the party giving or making the same.

(Mot. Ex. 2, at Exs. A, B.) The Contribution Agreements were signed by George Vandoros, Effie Vandoros, Warren J. Hawes, Mary Hawes, the Bakatsias Defendants, William R. Schermerhorn, Christine L. Schermerhorn, and Thomas Schermerhorn, but were not signed by Michael or Andrea Schermerhorn. (Mot. Ex. 2, at Exs. A, B.)

{20} Under the Contribution Agreements, each of the individual Parties was obligated to pay a pro rata share, equal to their interest in the properties, of the monthly payments due under the Loans. (Am. Compl. ¶ 57; Mot. Ex. 2, at Ex. A, at ¶ 1; Mot. Ex. 2, at Ex. B, at ¶ 1.)

{21} Plaintiffs allege that the Bakatsias Defendants made full payments pursuant to the Contribution Agreements through October 2009. Since December

2008, Plaintiffs allege, Theodore Bakatsias has paid $12,440.00 and Chryssoula Bakatsias has paid $16,508.00, but have instead each owed $40,786.29 during that same time period.  (Am. Compl. ¶ 61; Br. in Supp. of Summ. J. Mot. 10.)

## V.   ANALYSIS

{22}   Summary judgment is proper when the pleadings, depositions, answers to the interrogatories, admissions, and affidavits show that no genuine issue as to any material fact exists and that the movant is entitled to judgment as a matter of law.  N.C. Gen. Stat. § 1A-1, Rule 56(c) (2009); *Spaulding v. Honeywell Int'l, Inc.*, 184 N.C. App. 317, 320, 646 S.E.2d 645, 648 (2007).

{23}   Plaintiffs, by their Motion, seek: (1) a determination that the Contribution Agreements are valid and enforceable contracts against the Bakatsias Defendants; (2) judgment in the amount of $24,278.29 against Chryssoula Bakatsias and in the amount of $28,346.29 against Theodore Bakatsias; and (3) that the court order specific performance in that the Bakatsias Defendants will comply with their future obligations under the Contribution Agreements.

{24}   The Bakatsias Defendants contend that the Contribution Agreements are not valid and binding contracts because the Agreements "clearly contemplate that they are intended to be binding only upon execution by **all** co-owners," and Andrea and Michael Schermerhorn never signed the Agreements.  (Br. in Opp'n to Mot. for Summ. J./Partial Summ. J. [hereinafter "Bakatsias Defs.' Br. in Opp'n"] 1–2.)

{25}   The Bakatsias Defendants alternatively contend that, even if the Contribution Agreements are binding and enforceable, the provisions requiring notice have not been satisfied by Plaintiffs. (Bakatsias Defs.' Br. in Opp'n 2.) Specifically, the Bakatsias Defendants contend that the Contribution Agreements require the co-owner who makes an excess payment to send a signed, written notice to the non-paying co-owners owing reimbursement before any reimbursement becomes due.  (Bakatsias Defs.' Br. in Opp'n 2.)  That notice, according to the

Bakatsias Defendants, is a condition precedent which has not yet been fulfilled. (Bakatsias Defs.' Br. in Opp'n 2.)

{26}     Lastly, the Bakatsias Defendants contend that specific performance is not an appropriate remedy for two reasons.  First, specific performance is only available when an adequate remedy at law does not exist; and second, specific performance is not appropriate because the Bakatsias Defendants have shown their inability to comply with such an order.

{27}     The court will address each of these arguments in turn.


A.       The Contribution Agreements are Valid and Enforceable

{28}     Citing *Watters v. Hedgpeth*, 172 N.C. 310, 90 S.E. 314 (1916) for the principle that "[a]n offeror has a right to withdraw an offer not accepted within a reasonable time," the Bakatsias Defendants contend that the signature of each co-owner was an offer which was then conditioned upon the acceptance of all other co-owners.  (Bakatsias Defs.' Br. in Opp'n 1–2.)  The court does not view the signature of each co-owner on the Contribution Agreements as an offer which need be accepted by the unanimous consent of the remaining co-owners.  Rather, the signature of each co-owner is the manifestation of that co-owner's assent to the terms of the Contribution Agreement.  *See Branch Banking & Trust Co. v. Creasy*, 301 N.C. 44, 53, 269 S.E.2d 117, 123 (1980) ("By affixing her signature to the document, defendant manifested her assent to enter into [the contract]."); *Moseley v. WAM, Inc.*, 167 N.C. App. 594, 599, 606 S.E.2d 140, 143 (2004) ("When a party affixes his signature to a contract, he is manifesting his assent to the contract.").

{29}     Even if the court construes the Bakatsias Defendants' signatures on the Contribution Agreements as offers to the other co-owners which were only fully accepted upon acceptance of all other co-owners, it is clear that Michael and Andrea Schermerhorn have accepted the Contribution Agreements by performance; they have consistently made payments pursuant to their obligations under the Contribution Agreements.  (*See* Mot. Ex. 2, Ex. F.)  "[A] signature is not always

essential to the binding force of an agreement . . . and . . . in the absence of a statute it need not be signed, provided it is accepted and acted on, or is delivered and acted on." *Fidelity & Casualty Co. of N.Y. v. Charles W. Angle, Inc.*, 243 N.C. 570, 575–76, 91 S.E.2d 575, 579 (quoting *W.B. Coppersmith & Sons, Inc. v. Aetna Ins. Co.*, 222 N.C. 14, 21 S.E.2d 838 (1942)) (internal quotation marks omitted) (defendant argued the contract between it and plaintiff was not enforceable because plaintiff had failed to sign the agreement; the court found the contract enforceable because the plaintiff had repeatedly acted pursuant to the agreement); *see also Cap Care Grp., Inc. v. McDonald*, 149 N.C. App. 817, 822–23, 561 S.E. 2d 578, 582 (2002) (finding an enforceable agreement despite the defendants' failure to sign the agreement because the defendants accepted the consideration from the plaintiffs and acted pursuant to the terms of the agreement; noting that "[t]here was never any indication during that process that the parties were not operating [pursuant to the terms of the agreement]").

{30} The language of the Contribution Agreements also does not support Defendants' contention that a signature from each and every co-owner was a condition precedent to the contract becoming enforceable. A condition precedent is "a fact or event 'occurring subsequently to the making of a valid contract, that must exist or occur before there is a right to immediate performance, before there is a breach of contract duty, before the usual judicial remedies are available.'" *Farmers Bank, Pilot Mountain v. Michael T. Brown Distribs., Inc.*, 307 N.C. 342, 348 n.1, 298 S.E.2d] 357, 360 n.1 (1983) (quoting Arthur L. Corbin, *Corbin on Contracts* § 628, at 16 (1960)). "[T]he existence of such a condition [precedent] depends upon the intent of the parties as gathered from the words they have employed, and it will be interpreted according to general rules of construction." *Id.* at 347, 298 S.E.2d at 360 (second alteration in original) (quoting 17A C.J.S. *Contracts* § 338, at 318 (1963)). "Conditions precedent are not favored by the law," and "[a]bsent plain language, a contract ordinarily will not be construed as containing a condition precedent." *Craftique, Inc. v. Stevens & Co., Inc.*, 321 N.C. 564, 566–67, 364 S.E.2d 129, 131 (1988).

{31}     In *Moseley v. WAM, Inc.*, third-party defendant American Food Corporation (AFC) contended that an agreement for the assignment of a lease containing the language "WHEREAS, [another party] has requested that Frances C. Moseley [landlord] join in this assignment to express her consent to the same," followed by a signature block for Frances C. Moseley, was not valid and binding until signed by Moseley.  167 N.C. App. at 598, 606 S.E.2d at 143 ("[AFC] also argues that while it and the other parties signed the Assignment Agreement, they did not intend to be bound by the Assignment Agreement [on the date they signed it], but only on a later date if Moseley signed it.").  The Court of Appeals rejected this argument, finding that AFC was bound by the agreement because it had signed the agreement and had performed according to its terms.  *Id.* at 598–99, 606 S.E.2d at 143.  The Court of Appeals also rejected AFC's argument that Moseley's signature was a condition precedent to the Assignment Agreement becoming effective, finding that the language of the Assignment Agreement did not support the contention that Moseley's signature was a condition precedent to the agreement becoming binding.  *Id.* at 599–600, 606 S.E.2d at 144.

B.     The Notice Requirement

{32}     The Bakatsias Defendants next contend that the notice requirement evidenced by Paragraph 3 of the Contribution Agreements is a condition precedent to their obligation to reimburse the Plaintiffs for any over-payment.  Plaintiffs contend they have substantially complied and that, in any event, the Amended Complaint constitutes adequate notice.

{33}     In *Bombardier Capital, Inc. v. Lake Hickory Watercraft, Inc.*, a contract between third-party defendant Rowe and third-party plaintiff Marchese for the sale of Marchese's shares of stock to Rowe contained the following language:

> 3. That [Rowe] shall provide to [Marchese], at closing, written verification that [Marchese] has been released of any and all guarantees, notes, or obligations, of [Marchese] to . . . Bombardier Capital[.]

178 N.C. App. 535, 536–37, 632 S.E.2d 192, 194 (2006). At the closing of the sale of Marchese's shares, Rowe failed to provide the written verification required by paragraph 3. *Id.* at 537, 632 S.E.2d at 194. Rowe contended that the written verification requirement was a condition precedent, and, because that condition was not satisfied, he was not bound by the contract. The Court of Appeals found that "Rowe's argument fails because the plain language of Contract provision 3 does not require a condition to occur before the contract is valid." *Id.* at 539, 632 S.E.2d at 195.

{34} Similar to the language in *Bombardier*, here the Contribution Agreements require that "the party making such payment [in excess of their pro-rata share] shall issue a notice . . . ." (Mot. Ex. 2, at Exs. A, B.) In contrast, the previous paragraph states that "[t]he right to contribution . . . shall exist *only* upon payment by a Co-Owner of an amount [in excess of their pro-rata share]." (Mot. Ex. 2, at Exs. A, B (emphasis added).) Defendants do not contest that Plaintiffs have made payments in excess of their pro-rata shares. (*See generally* Bakatsias Defs.' Br. in Opp'n 2 (contending that reimbursement is not yet due because proper notice has not yet been given, but not challenging that Plaintiffs have made excess payments).)

{35} North Carolina recognizes the doctrine of substantial performance which allows a party to recover on a contract even without exact compliance with its terms. *See Cator v. Cator*, 70 N.C. App. 719, 722, 321 S.E.2d 36, 38 (1984). The general rule is "that if either party to the contract commits a material breach of the contract, the other party should be excused from the obligation to perform further." *Williams v. Habul*, 2012 N.C. App. LEXIS 337, 724 S.E.2d 104, 112 (quoting *Coleman v. Shirlen*, 53 N.C. App. 573, 281 S.E.2d 431 (1981)). Plaintiffs contend they have "made repeated written demands on the [Bakatsias Defendants] for payment of the delinquent amounts, including, but not limited to, service of the Amended Complaint upon such defendants." (Mot. 8; Mot. Ex. 2, at ¶ 9.) Defendants contest whether these efforts provide the required notice. *See Spivey &*

*Self, Inc. v. Highview Farms, Inc.*, 110 N.C. App. 719, 727, 431 S.E.2d 535, 539 (1993); *Black v. Clark*, 36 N.C. App. 191, 195–96, 243 S.E.2d 808, 811 (1978).  Here, the court expects that ultimately, notice will prove to be a technicality, but, the Bakatsias Defendants have raised an issue adequate to avoid summary judgment at this stage.  However, if given proper notice, the Bakatsias Defendants will have no defense to liability upon a claim that the Contribution Agreements are invalid.

C.    <u>Specific Performance</u>

{36}    "To invoke equitable jurisdiction, it must appear that the party injured by the breach can not be adequately compensated by monetary payment.  If that be so, specific performance may be decreed."  *Bell v. Smith Concrete Prods.*, 263 N.C. 389, 390, 139 S.E.2d 629, 630 (1965).  Determining the adequacy of a legal remedy may include consideration of "the probability that full compensation cannot be had without multiple litigation."  *Teague v. Springfield Life Ins. Co.*, 55 N.C. App 437, 440–41, 285 S.E.2d 860, 862–63 (1982) (quoting *Restatement of Contracts* § 361).

{37}    However, "[s]pecific performance will not be decreed against a defendant who is incapable of complying with his contract."  *Cavenaugh v. Cavenaugh*, 317 N.C. 652, 657, 347 S.E.2d 19, 23 (1986).  The Bakatsias Defendants contend they are financially incapable of complying with an order granting specific performance.  (Bakatsias Defs.' Br. in Opp'n 4.)  Plaintiffs present no evidence to the contrary.  Based on this asserted and uncontested inability of the Bakatsias Defendants to comply the court will not order specific performance.

## VI.    CONCLUSION

{38}    For the reasons stated above, Plaintiffs' Renewed and Amended Motion for Summary Judgment/Partial Summary Judgment is hereby GRANTED in part and DENIED in part.

IT IS SO ORDERED, this the 4th day of June, 2013.