IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-790

No. COA22-391

Filed 6 December 2022

Chatham County, No. 21 CVS 322

RICKY SPOON BUILDERS, INC, Plaintiff,

v.

EMGEE LLC, Defendant.

Appeal by Plaintiffs from order entered 21 February 2022 by Judge Alyson Adams Grine in Chatham County Superior Court. Heard in the Court of Appeals 4 October 2022.

*Harris Sarratt & Hodges, LLP, by Donald J. Harris, for Plaintiffs-Appellants.*

*Wyrick Robbins Yates & Ponton LLP, by Charles George and Mary Kate Gladstone, for Defendant-Appellee.*

COLLINS, Judge.

Ricky Spoon Builders, Inc., Ricky Spoon, and Melissa K. Spoon (collectively, "Plaintiffs") appeal from the trial court's order granting summary judgment for EmGee LLC ("Defendant"). Plaintiffs argue that the trial court erred by granting Defendant's motion for summary judgment because Plaintiffs either fully complied or substantially complied with the parties' Agreement. As Plaintiffs did not fully or substantially comply with the Agreement, we affirm.

## I.    Procedural History and Factual Background

¶ 2        Plaintiffs owned approximately 150 acres of real property in Chatham County, North Carolina ("Property").  On 15 August 2014, Plaintiffs and Defendant entered into a memorandum of understanding whereby the parties agreed, among other things, that Defendant would acquire title to the Property and convey it to a newly created LLC, jointly owned by Plaintiffs and Defendant.  When the parties disagreed about whether they had complied with the memorandum of understanding, litigation ensued.

¶ 3        After mediation, the parties entered into an Agreement, which allowed both parties the opportunity to buy the Property under certain terms, including the following:

> The Initial Offer: Either Party may make a one-time, all cash offer to purchase the [Property] (the "Initial Offer"). The Initial Offer shall be in writing and shall set forth the purchase price at which the Party making the offer (the "Offering Party") is willing and able to close.  At the same time it submits its Initial Offer to the other party (the "Receiving Party"), the Offering Party shall deposit a non-refundable earnest money deposit in the amount of One Hundred Thousand Dollars ($100,000.00) with Investors Title Insurance Company–Chapel Hill Branch, which shall serve as a third-party escrow agent (the "Escrow Agent").
>
> The Response Offer: If the Offering Party makes an Initial Offer as set forth in subsection (a), the Receiving Party may then exercise a one-time absolute right to purchase the [Property] (the "Response Offer").  The Response Offer shall exceed the Initial Offer by One Hundred Thousand

> Dollars ($100,000.00) and shall be submitted to the Offering Party in writing within ten (10) days of the Receiving Party's receipt of the Initial Offer and confirmation from Escrow Agent that it has received the earnest money deposit from the Offering Party. Simultaneous with submission of the Response Offer to the Offering Party, the Receiving Party shall deposit a non-refundable earnest money deposit in the amount of One Hundred Thousand Dollars ($100,000.00) with the Escrow Agent. Once the Receiving Party has submitted its Response Offer, the Offering Party may not increase its Initial Offer. After confirming receipt of the Receiving Party's earnest money deposit, the Escrow Agent will release and return Offering Party's earnest money deposit to it.
>
> . . . .
>
> Expiration: The Buy-Sell Agreement expires at 5 pm EST on November 3, 2020. In no event shall the Receiving Party have less than ten days to respond to an Initial Offer that is made prior to the expiration date and time. Upon expiration of the Buy-Sell Agreement, any and all rights and responsibilities of the Parties under the Buy-Sell Agreement . . . are terminated.
>
> . . . .
>
> 7. **Time of Essence:** The Parties agree that time is of the essence with regard to this Agreement and the transactions and events contemplated hereby.

Of particular relevance in this case are the following terms: "At the same time it submits its Initial Offer to the other party (the "Receiving Party"), the Offering Party shall deposit a non-refundable earnest money deposit in the amount of One Hundred Thousand Dollars ($100,000.00) with Investors Title Insurance Company–Chapel Hill Branch"; the Agreement expires "at 5 pm EST on November 3, 2020"; and "[t]he

Parties agree that time is of the essence with regard to this Agreement and the transactions and events contemplated hereby."

¶ 4     On the afternoon of 2 November 2020, Ricky Spoon wired $100,000 in earnest money into Plaintiffs' counsel's trust account. The funds cleared on 3 November 2020, and Plaintiffs' counsel drew a check from his trust account made payable to Investors Title Insurance. At 3:52 p.m. that day, Plaintiffs, through their counsel, submitted a written Initial Offer via email to Defendant, through its counsel. Shortly thereafter, Plaintiff Ricky Spoon hand-delivered the written Initial Offer to Defendant's counsel.

¶ 5     Yvonne Rodriguez Sanchez, a legal assistant for Plaintiffs' counsel, called Wells Fargo and was told that the bank was closed to walk-in customers due to COVID-19 and that an appointment was required to wire the funds to Investors Title. Sanchez was also told that there were no appointments available that afternoon.

¶ 6     At some point that afternoon, Plaintiffs' counsel spoke with Gina Webster, the Vice President of Escrow and Settlement Operations for Investors Title. Plaintiffs' counsel asked Webster whether Investors Title would accept a check drawn from his firm's trust account; Webster confirmed that it would. At that time, Webster did not have a copy of the Agreement or Escrow Addendum. Plaintiffs' counsel testified that he was told Investors Title was closed. Webster submitted an affidavit in which she averred that she generally recalled speaking with Plaintiffs' counsel, but she did not recall him asking whether he could hand-deliver a check to the office. Shortly after

4:00 p.m., Plaintiffs' counsel put the earnest money check into an envelope and placed it in the mail at the post office near his office.

¶ 7 On 4 November 2020, Plaintiffs' counsel and Defendant's counsel exchanged a series of emails, which included the following from Defendant's counsel at 9:41 p.m.:

> As of 2:00 today, Titles Investor (sic) had not received Spoon's funds as required to be deposited by 5:00 on 11/3. The Settlement Agreement was created 90 days ago, and each party knew and agreed to the timelines. "Time is of the essence" was part of the agreement, to make certain that time lines were strictly adhered to and enforced.
>
> The Agreement expired at 5:00 pm on 11/3 at 5:00 (sic). No money was deposited with the Escrow agent by that time. Since the Settlement Agreement expired at 5:00 pm yesterday, the parties no longer have any obligations to each other under the Settlement Agreement. Your client was well-aware of the deadlines, even to the point of driving to Raleigh on 11/3 to personally deliver his offer to purchase to me, as counsel for EmGee. Instead of timely depositing his $100,000 directly with Investors Title, he chose to wire funds to you. And your check, not certified, were not a deposit of readily available, non-refundable funds, as required. As such, Spoon has not made a timely offer per the Agreement, and our client has no further obligations to him. Title to the [Property] remains with Emgee, LLC.

The envelope containing the earnest money check was post-marked 5 November 2020 and was not received by Investors Title until 16 November 2020.

¶ 8 When Defendant refused to close on the sale of the Property, Plaintiffs filed suit for breach of contract, breach of covenant of good faith and fair dealing, specific performance, and unjust enrichment. Plaintiffs and Defendant filed competing

motions for summary judgment; Plaintiffs subsequently withdrew their motion. After a hearing, by written Order entered 21 February 2022, the trial court granted summary judgment for Defendant. Plaintiffs timely appealed.

## II. Discussion

¶ 9     Plaintiffs argue that the trial court erroneously granted summary judgment for Defendant because "Plaintiffs fully or substantially complied with the terms of the Agreement by . . . depositing a non-refundable earnest money deposit in the amount of One Hundred Thousand Dollars ([$]100,000.00) with Investors Title Insurance Company by posting with the USPS prior to 5:00 p.m. on November 3, 2020, a $100,000.00 check written from Plaintiffs' counsel's firm trust account and made payable to Investors Title Insurance Company."

¶ 10     We review a trial court's order granting summary judgment de novo. *Proffitt v. Gosnell*, 257 N.C. App. 148, 151, 809 S.E.2d 200, 203 (2017). Under de novo review, this Court "considers the matter anew and freely substitutes its own judgment for that of the lower [court]." *Blackmon v. Tri-Arc Food Sys., Inc.*, 246 N.C. App. 38, 41, 782 S.E.2d 741, 743 (2016) (quotation marks and citations omitted).

¶ 11     Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2021). The party

moving for summary judgment

> bears the burden of showing that no triable issue of fact exists. This burden can be met by proving: (1) that an essential element of the non-moving party's claim is nonexistent; (2) that discovery indicates the non-moving party cannot produce evidence to support an essential element of his claim; or (3) that an affirmative defense would bar the [non-moving party's] claim. Once the moving party has met its burden, the non-moving party must forecast evidence demonstrating the existence of a *prima facie* case.

*CIM Ins. Corp. v. Cascade Auto Glass, Inc.*, 190 N.C. App. 808, 811, 660 S.E.2d 907, 909 (2008) (citations omitted).

**A. Full Compliance**

Plaintiffs first argue that they fully complied with the terms of the Agreement because the "mailing of the Escrow Deposit to Investors Title constituted a 'deposit' as contemplated by the terms of the [Agreement]."

"Whenever a court is called upon to interpret a contract[,] its primary purpose is to ascertain the intention of the parties at the moment of its execution." *Lane v. Scarborough*, 284 N.C. 407, 409-10, 200 S.E.2d 622, 624 (1973) (citations omitted). "When a contract is in writing and free from any ambiguity which would require resort to extrinsic evidence, or the consideration of disputed fact, the intention of the parties is a question of law. The court determines the effect of their agreement by declaring its legal meaning." *Id.* at 410, 200 S.E.2d at 624 (citations omitted).

"Further, in interpreting a contract, the common or normal meaning of language will be given to the words of a contract unless the circumstances show that in a particular case a special meaning should be attached to it." *S.N.R. Mgmt. Corp. v. Danube Partners 141, LLC*, 189 N.C. App. 601, 620, 659 S.E.2d 442, 455 (2008) (quotation marks and citation omitted).

¶ 14        Here, the relevant portions of the Agreement are free from ambiguity. The Agreement provides that either party may make a written Initial Offer and that at the same time the Offering Party submits its Initial Offer to the Receiving Party, "the Offering Party shall deposit a non-refundable earnest money deposit in the amount of One Hundred Thousand Dollars ($100,000.00) with Investors Title Insurance Company–Chapel Hill Branch . . . ." The Agreement also explicitly "expires at 5 pm EST on November 3, 2020."

¶ 15        The term "deposit with" as used in the Agreement's term "deposit . . . with Investor's Title" is not defined in the Agreement. The verb "deposit"[1] is defined as "[t]he act of giving money or other property to another who promises to preserve it or to use it and return it in kind; esp., the act of placing money in a bank for safety and

---

[1] Not to be confused with the noun "deposit" used in the Agreement's term "earnest money deposit." An earnest money deposit is "[a] deposit paid (often in escrow) by a prospective buyer (esp. of real estate) to show a good-faith intention to complete the transaction, and ordinarily forfeited if the buyer defaults." *Earnest Money, Black's Law Dictionary* (11th ed. 2019). The parties do not argue about the significance of this term.

convenience." *Deposit, Black's Law Dictionary* (11th ed. 2019). The preposition "with" is generally defined as "in the care, guidance, or possession of[.]" *Webster's Third New International Dictionary* 2626 (2002). Taken together, the term "deposit with" means "giving or placing in the care, guidance, or possession of." Accordingly, the Agreement required Plaintiffs, as the Offering Party, to give or place the earnest money in the care, guidance, or possession of Investors Title Insurance Company–Chapel Hill Branch at the same time they submitted their Initial Offer to Defendant, and no later than "5 pm EST on November 3, 2020[,]" when the Agreement expired.

¶ 16    Here, by placing the earnest money check drawn on Plaintiffs' counsel's trust account into the mail on 3 November 2020 around 4:00 p.m., Plaintiffs did not give or place a non-refundable earnest money deposit in the amount of One Hundred Thousand Dollars ($100,000.00) in the care, guidance, or possession of Investors Title Insurance Company–Chapel Hill Branch at the same time they submitted their Initial Offer to Defendant and before the expiration of the Agreement "at 5 pm EST on November 3, 2020." Accordingly, Plaintiffs failed to fully comply with the Agreement.

**B. Substantial Performance**

¶ 17    Plaintiffs next argue that if "mailing the Escrow Deposit did not constitute full compliance with the terms of the [Agreement] under the circumstances existing as of

November 3, 2020, then [it] certainly constituted substantial performance."[2]

¶ 18        North Carolina recognizes the equitable doctrine of substantial performance, which "allow[s] a party to recover on a contract although [it] has not literally complied with its provisions." *Cator v. Cator*, 70 N.C. App. 719, 722, 321 S.E.2d 36, 38 (1984) (citations omitted). "[T]he doctrine was conceived for use in a situation where the []plaintiff has given the []defendant a substantial portion of that for which he bargained and the performance is of such a nature that it cannot easily be returned." *Black v. Clark*, 36 N.C. App. 191, 195, 243 S.E.2d 808, 811 (1978) (citation omitted). While building and construction contracts readily lend themselves to the application of the doctrine of substantial performance, the doctrine is not limited in its application to those types of contracts. *Id.*

¶ 19        A "time is of the essence" clause makes completion dates and times a material term of a contract, causing a material breach if performance is late. *See Fairview Developers, Inc. v. Miller*, 187 N.C. App. 168, 173, 652 S.E.2d 365, 369 (2007); *see also Fletcher v. Jones*, 314 N.C. 389, 393 n.1, 333 S.E.2d 731, 734 n.1 (1985). North Carolina courts recognize that "[f]reedom of contract is constitutionally guaranteed and provisions in private contracts, unless contrary to public policy or prohibited by statute, must be enforced as written." *Great Am. Ins. Co. v. C. G. Tate Constr. Co.*,

---

[2] Plaintiffs use the terms substantial compliance and substantial performance interchangeably. We will refer to "substantial performance" in this opinion.

303 N.C. 387, 391, 279 S.E.2d 769, 772 (1981). Accordingly, the doctrine of substantial performance traditionally has not applied where the parties, by the terms of their agreement, make it clear that only strict or complete performance will be satisfactory. 17A Am Jur 2d Contracts § 603.

¶ 20 Here, the Agreement includes a "time is of the essence" provision, making the time for depositing a non-refundable $100,000 earnest money deposit with Investors Title Insurance Company–Chapel Hill Branch and the time for the expiration of the Agreement material terms of the Agreement. Accordingly, the parties made it clear by the terms of their Agreement that only strict or complete performance would be satisfactory, and the doctrine of substantial performance does not apply.

¶ 21 Even were we able to consider tempering the traditional rule by recognizing that a "time is of the essence" provision does not automatically render untimely performance a breach and will not be enforced if doing so would constitute a forfeiture on an otherwise substantially complying party, the doctrine of substantial performance does not excuse Plaintiffs' breach in this case.

¶ 22 The earnest money check was received and deposited by Investors Title Insurance Company–Chapel Hill Branch on 16 November 2020, 13 days after the expressed expiration of the Agreement. Plaintiffs deposited no portion of the earnest money prior to the Agreement's expiration. As no portion of the earnest money was deposited with Investors Title Insurance Company–Chapel Hill Branch prior to the

expiration of the Agreement, Plaintiffs did not perform at all, much less substantially perform, under the Agreement. *See, i.e., Lake Ridge Acad. v. Carney*, 66 Ohio St. 3d 376, 378-79, 613 N.E.2d 183, 185-86 (1993) (holding that there was "no reasonable argument that [defendant] 'substantially complied' with the provision of the contract requiring him to notify [plaintiff] of his child's withdrawal prior to August 1 . . . when [defendant's] cancellation letter was dated August 1, 1989, mailed or postmarked August 7, 1989, and received August 14, 1989"). Moreover, Plaintiffs did not forfeit the Property, they merely forfeited the opportunity to potentially purchase it; and Plaintiffs' earnest money was returned to them in full in March 2021, restoring them to their original position.

¶ 23 Plaintiffs also argue that "whether there has been substantial performance of a contract is actually a question of fact for the jury" such that whether Plaintiffs substantially complied with the Agreement "was not an appropriate consideration for the trial court on summary judgment." However, the cases cited by Plaintiffs in support of their argument all involved *some* performance by the plaintiff such that the jury had to resolve a factual issue. *See Clark*, 36 N.C. App. at 193, 196, 243 S.E.2d at 810, 812; *Bryant & Assocs. v. Evans*, 224 N.C. App. 397 (2012) (unpublished); *Almond Grading Co. v. Shaver*, 74 N.C. App. 576, 578, 329 S.E.2d 417, 418 (1985); *Gibson Contractors, Inc. v. Church of God in Christ Jesus of Angier*, 165 N.C. App. 543, 600 S.E.2d 899 (2004) (unpublished). Here, as previously noted, no performance

was tendered, and thus no triable issue of fact of substantial performance arose for the jury.

¶ 24   Accordingly, as Plaintiffs did not perform or substantially perform under the Agreement, the trial court did not err by granting Defendant's motion for summary judgment.

## III.   Conclusion

¶ 25   As Plaintiffs did not fully or substantially comply with the Agreement, the trial court's order granting summary judgment for Defendant is affirmed.

AFFIRMED.

Judges TYSON and INMAN concur.