An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-1075

Filed 1 October 2025

Brunswick County, No. 24CVS000056-090

TOM, LLC and HOOSIER DADDY, LLC, Plaintiffs,

v.

SOUTH RIVER LAND COMPANY, LLC; SOUTH RIVER COMMUNITIES, LLC; STEVEN W. TATUM; URSUS AMERICANUS, LLC; URSUS MARTIMUS, LLC; GULO GULO, LLC; ALCES SHIRASI, LLC; SEAWATCH AT SUNSET HARBOR, LLC; NORTH MYRTLE LIQUIDATING TRUST; ANDREW BOLNICK in his individual capacity and as Trustee of the NORTH MYRTLE LIQUIDATING TRUST; COUNTY OF BRUNSWICK, NORTH CAROLINA; and BOND SAFEGUARD INSURANCE COMPANY, Defendants.

Appeal by Plaintiffs from orders entered 16 May 2024, 20 May 2024, and 10 June 2024 by Judge Jason C. Disbrow in Brunswick County Superior Court. Heard in the Court of Appeals 20 May 2025.

*Reiss & Nutt, PLLC, by W. Cory Reiss, for the Plaintiffs-Appellants.*

*Troutman Pepper Locke, LLP, by D. Kyle Deak, for North Myrtle Liquidating Trust, and Andrew Bolnick as Trustee of North Myrtle Liquidating Trust, Defendants-Appellees.*

*Murchison, Taylor & Gibson PLLC, by Andrew K. McVey, for South River Land Company, LLC, Defendant-Appellee.*

*Brunswick County Attorney's Office, by Bryan W. Batton and Ryan S. King, for County of Brunswick North Carolina, Defendant-Appellee.*

*Hansen Law, PLLC, by Daniel R. Hansen, for Bond Safeguard Insurance Company, Defendant-Appellee, no brief filed.*

*Morningstar Law Group by Christopher T. Graebe, for Seawatch at Sunset Harbor, LLC; South River Communities, LLC; Urus Americanus, LLC; Urus Martimus, LLC; Gulo Gulo, LLC; and Alces Shirasi, LLC, Defendants-Appellees.*

WOOD, Judge.

TOM, LLC and Hoosier Daddy, LLC (collectively "Plaintiffs") appeal from three separate orders granting Defendants' motions to dismiss for failure to state a claim. The first order, filed on 16 May 2024, granted the motion by South River Land Company, LLC and Steven W. Tatum. The second order was filed on 20 May 2024 and granted the motion by Seawatch at Sunset Harbor, LLC, South River Communities, LLC, Ursus Americanus, LLC, Ursus Maritimus, LLC, Gulo Gulo, LLC, and Alces Shirasi, LLC. The third order, also filed on 20 May 2024, granted the motion by North Myrtle Liquidating Trust and Andrew Bolnick.

Plaintiffs also appeal from an order entered on 10 June 2024 granting Brunswick County and Bond Safeguard Insurance Company's motion to dismiss on the basis that no real party of interest remained thereby rendering the Brunswick County and Bond Safeguard Insurance Company's involvement in the matter moot. Plaintiffs contend the trial court erred by granting all four of the Defendants' motions

to dismiss because the Contract at issue was enforceable at all relevant times. After careful review of the record and applicable law, we affirm the orders of the trial court.

## I.    Factual and Procedural Background

In September 2020, Jack Carlisle ("Carlisle") as sole member of Plaintiff TOM, LLC ("TOM") began negotiations to purchase real property, a subdivision known as Seawatch at Sunset Harbor ("Seawatch") in Brunswick County. On 4 November 2020, the parties executed the contract for TOM to purchase Seawatch from South River Land Company, LLC ("South River") for $2,800,000.00 ("the Contract") with "time being of the essence" by which to close on the property. TOM paid a non-refundable $100,000.00 deposit at signing. This transaction was intended to be a "flip" deal whereby TOM entered into the Contract to purchase Seawatch while being aware South River did not yet own the property and aware the sale would be contingent on South River's successful acquisition of Seawatch. The terms of the Contract stated, in pertinent part:

> 23. **Seller Contingency.** The parties acknowledge and agree that all of [South River's] obligations under this Contract are contingent upon [South River] closing on the purchase of the Property pursuant to that Agreement for Sale and Purchase of Property dated effective as of July 8, 2020 by and between [South River], as purchaser, and Andrew Bolnick, as Trustee for the North Myrtle Liquidating Trust, as seller (as it may be amended from time to time, the "Trust Contract"). Should closing under the Trust Contract not occur on or before Closing under this Contract, Seller may, at its sole option, terminate this Contract, upon which neither party shall have any further obligation to the other, except for Surviving Obligations.

The Contract closing date was to be "on or before December 9, 2020 . . . time being of the essence . . ." or if the first sale from North Myrtle Liquidating Trust ("NMLT") to South River was extended, the Contract closing would be extended to "on or before January 9, 2021." The Contract closing date was further extended by two written amendments executed on 9 November 2020 and 18 January 2021 to accommodate the first sale of Seawatch from NMLT to South River. At the time of the first Contract amendment, Plaintiffs paid an additional $100,000.00 earnest money deposit in consideration for the extended closing date, for a total of $200,00.00 in earnest money paid to be credited towards the purchase price at closing. The first Contract amendment also amended the purchase price from $2,800,000.00 to $2,700,000.00. On 5 January 2021, TOM assigned their "right, title, interest, and duties in and to the Contract" to Hoosier Daddy, LLC ("Hoosier") in accordance with Section 19 of the Contract. Carlisle is the sole member of both TOM and Hoosier.

NMLT was formed in 2013 to hold and sell Seawatch on behalf of its beneficiary, Bank of America, and to "secure performance of improvements within Seawatch by its previous owner, [Seawatch at Sunset Harbor, LLC]." Andrew Bolnick ("Bolnick") served as trustee for NMLT. On 6 August 2013, Bolnick on behalf of NMLT, Bond Safeguard Insurance, and Brunswick County entered into a Bond Replacement Agreement providing "should NMLT sell Seawatch, the new purchaser

must also be subject to the conditions of the [Bond Replacement Agreement], including those contained in any Amendments to that Agreement."

Over time, six amendments were made to the Bond Replacement Agreement, with the Sixth Amendment stating in pertinent part:

> a new purchaser from NMLT would not be required to post any "Replacement Bond" with the County or release any "Existing Bonds" but would instead: (1) execute an Improvement Guarantee Agreement in favor of Brunswick County with respect to any work covered by the bonds that had not yet been completed and (2) post a new bond for Phases 10A/10B of Seawatch.

The Bond Replacement Agreement stated the face value of "Existing Bonds" to be in the aggregate $11,921,060.26 at the time it was formed. However, on 13 January 2021, Seawatch at Sunset Harbor, LLC ("SSH"), the prior owners of Seawatch, filed suit against NMLT, Bank of America, and South River alleging NMLT breached their obligations to SSH as an intended third party beneficiary to the Bond Replacement Agreement by entering into the purchase contract with South River and failing to require South River to post replacement bonds or an equivalent release of the existing bonds posted by South River in accordance with the Sixth Amendment to the Bond Replacement agreement. A *lis pendens* was docketed against Seawatch.

Plaintiffs allege South River informed them at the time of the second Contract amendment "that it hoped an injunction hearing would take place early in the week of January 25[, 2021] with the expectation that injunctive relief would be denied." However, the hearing did not take place within that time frame. On 11 March 2021,

an order was entered granting a preliminary injunction prohibiting the transfer of Seawatch unless replacement bonds were posted. The 11 March 2021 order provides:

> [d]uring the pendency of this Order, Andrew Bolnick, Trustee of the North Myrtle Liquidating Trust (the "Trust"), and any successor trustee or other person acting or purporting to act on behalf of or in active concert with the Trust, are hereby enjoined and prohibited from transferring any of the Seawatch Real Estate listed on the attached Exhibit A or any interest therein, without requiring that *[South River] or any other prospective transferee post replacement bonds* such that [SSH] and its affiliates and principals are released from any liability under all existing bonds applicable to said real estate.

Between 29 January 2021, the date of the second Contract amendment, and 30 December 2021, Plaintiffs did not communicate or attempt to communicate with South River or Steven Tatum ("Tatum"), the sole owner of South River, resulting in an approximate 11 month absence of communication between the parties *after* the final extended closing date of 29 January 2021.

One week following the dismissal of the lawsuit and cancellation of the *lis pendens,* NMLT sold Seawatch to South River Communities, LLC ("SR Communities") for $1,225,000.00. Plaintiffs contend the sale price was "considerably below fair market value." Tatum is listed as the registered agent for SR Communities. SR Communities conveyed portions of Seawatch to Defendants Ursus Americanus, LLC ("UA"), Ursus Maritimus, LLC ("UM"), Gulo Gulo, LLC ("GG"), and Alces Shirasi, LLC ("AS"). UA, UM, GG, and AS are all alleged to be "either owned or controlled by [Mark] Saunders or entities owned or controlled by [Mark] Saunders."

On 30 December 2021, "Tatum and Carlisle spoke following the recording of the deed purporting to convey Seawatch to [SR Communities] instead of [South River]." Further, "Carlisle inquired with Tatum why the Seawatch deal had not gone through yet . . . [and] [d]uring their conversation, Tatum discouraged Carlisle from pursuing [their] rights under the Contract." Tatum "attempted and purported to declare the Contract expired and unenforceable." Plaintiffs contend they never received "any notice of termination of the Contract from [South River] or its representative, Tatum." After this conversation, Tatum sent Carlisle a handwritten note stating, "we wound up closing on the property and found someone to assist with the bonds, understanding that you would not close and replace the bonds and that our contract had expired," along with a check payable to Carlisle in the amount of $100,000.00 which Carlisle did not accept.

On 9 January 2024, Plaintiffs filed a complaint alleging (1) breach of contract requesting specific performance against South River and SR Communities; (2) breach of contract requesting damages in the alternative against South River and SR Communities; (3) fraud against South River and Tatum in the alternative to breach of contract; (4) voidable transfer pursuant to N.C. Gen. Stat. § 39-23.4(a)(1), (2) against NMLT, South River, SR Communities, UA, UM, GG, and AS; (5) unfair or deceptive trade practices against South River, SR Communities, Tatum, UA, UM, GG, and AS; and (6) civil conspiracy against South River, SR Communities, Tatum, UA, UM, GG, and AS. Plaintiffs also filed a notice of *lis pendens* against Seawatch.

Defendants filed a total of four motions to dismiss in response to the Complaint. On 11 March 2024, NMLT and Bolnick filed a motion to dismiss pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) for failure to state a claim. On 15 March 2024, Brunswick County filed a motion to dismiss contending "Plaintiff states no claim and requests no recovery from County of Brunswick." On 27 March 2024, Seawatch, SR Communities, UA, UM, GG, and AS filed a motion to dismiss for failure to state a claim and motion to dismiss for cancellation of the *lis pendens*. On 26 March 2024, South River and Tatum filed an answer, motion to dismiss, and motion for judgment on the pleadings. Specifically, South River and Tatum contend "[t]he underlying predicate for virtually all of Plaintiffs' claims is the false notion that Plaintiffs [had] an enforceable right to purchase the real property that the complaint refers to as 'Seawatch' at the time Seawatch was transferred to [SR Communities] in December 2021." Further, South River and Tatum contend there was no enforceable right at that time of transfer because the Contract between South River and Plaintiffs had a "time is of the essence" clause and Plaintiff did not tender performance, thus the Contract naturally terminated. On 13 May 2024, a hearing on all motions took place. The trial court denied South River and Tatum's motion for judgment on the pleadings but granted all motions to dismiss by orders filed on 16 May 2024, 20 May 2024, and 10 June 2024.

## II.    Analysis

On appeal, Plaintiffs raise five issues. Plaintiffs argue the trial court erred in

granting the motions to dismiss because (1) South River's time is of the essence defense fails, (2) the fraud claim is properly stated, (3) a voidable transfer claim is properly stated, (4) a claim for unfair or deceptive trade practices and the existence of civil conspiracy is properly stated, and (5) the claims against Bond Safeguard Insurance and Brunswick County are not moot.

## A. Standard of Review

A Rule 12(b)(6) motion to dismiss "tests the legal sufficiency of the complaint" and upon review, "the factual allegations in [the] plaintiff's complaint are treated as true." *Moss v. N.C. Dep't of State Treasurer*, 282 N.C. App. 505, 509, 872 S.E.2d 113, 117 (2022) (cleaned up). "The complaint must be liberally construed, and the court should not dismiss the complaint unless it appears beyond a doubt that the plaintiff could not prove any set of facts to support his claim which would entitle him to relief." *Block v. Cnty. of Person*, 141 N.C. App. 273, 277-78, 540 S.E.2d 415, 419, (2000).

> In North Carolina, dismissal pursuant to Rule 12(b)(6) is appropriate when one of three conditions is satisfied: (1) when on its face the complaint reveals no law that supports plaintiff's claim; (2) when on its face the complaint reveals the absence of fact sufficient to make a good claim; and (3) when some fact disclosed in the complaint necessarily defeats plaintiff's claim.

*BDM Invs. v. Lenhil, Inc.*, 264 N.C. App. 282, 291-92, 826 S.E.2d 746, 756 (2019) (cleaned up) (quoting *Johnson v. Bollinger*, 86 N.C. App. 1, 4, 356 S.E.2d 378, 380 (1987)).

"This Court must conduct a *de novo* review of the pleadings to determine their

legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct." *Leary v. N.C. Forest Prods., Inc.*, 157 N.C. App. 396, 400, 580 S.E.2d 1, 4 (2003). "The trial court can only consider facts properly pleaded and documents referred to or attached to the pleadings." *Hale v. MacLeod*, 294 N.C. App. 318, 328, 904 S.E.2d 142, 150 (2024) (quoting *Builders Mut. Ins. Co. v. Glascarr Props., Inc.*, 202 N.C. App. 323, 324, 688 S.E.2d 508, 510 (2010)).

Generally, a trial court may look only to the complaint to determine the legal sufficiency of the pleading on a Rule 12(b)(6) motion; however, a trial court may consider an attached document first presented by the defendant when the document is "the subject of a plaintiff's action that he or she specifically refers to in the complaint" without converting to summary judgment. *Holton v. Holton*, 258 N.C. App. 408, 418-19, 813 S.E.2d 649, 657 (2018). Here, Plaintiffs did not attach the Contract to the Complaint, but South River and Tatum did attach the Contract to their answer and motions to dismiss. Additionally, Plaintiff specifically refers to the Contract, both Contract amendments, the 8 July 2020 contract, and the Bond Replacement Agreement throughout the Complaint, thus the trial court could properly consider these documents when ruling on the Rule 12(b)(6) motion. *Oberlin Cap., L.P. v. Slavin*, 147 N.C. App. 52, 60-61, 554 S.E.2d 840, 847 (2001).

**B. Breach of Contract**

"The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of the contract." *McDonald v. Bank of N.Y.*

*Mellon Tr. Co., Nat'l Ass'n*, 259 N.C. App. 582, 586, 816 S.E.2d 861, 864 (2018) (quoting *McLamb v. T.P. Inc.*, 173 N.C. App. 586, 588, 619 S.E.2d 577, 580 (2005)).

Plaintiffs made two breach of contract claims against South River and SR Communities, seeking specific performance and, in the alternative, seeking damages exceeding $25,000.00. Plaintiffs' breach of contract claims pertain to South River's obligation "under the July 8 Contract to investigate and assume all obligations under the Bond Replacement Agreement." Plaintiffs allege South River "knew or should have known that it could or would be obligated to replace the existing bonds when it entered its Contract with Plaintiffs . . . [and the] failure or refusal to do so breached the Contract with the Plaintiffs." Further, Plaintiffs allege South River "caused a new entity, [SR Communities], to purchase the property for far less than market value" while still in an enforceable contract with Plaintiffs.

While the trial court made no findings to indicate its reasoning for granting the motions to dismiss, Defendants in their respective motions argued at the hearing that the "time is of the essence" clause contained in the Contract caused the Contract to naturally terminate when the 29 January 2021 closing date passed and performance was not tendered by Plaintiffs.

Plaintiffs raise four arguments on appeal as to why the "time is of the essence" defense against the breach of contract claims fails: (1) the Complaint and Contract show the purported essential time for closing provision was ambiguous and waived; (2) the waiver did not need to be in writing; (3) Plaintiffs were not required to tender

performance; and (4) good faith required South River to perform under both contracts.

Defendants argue the Complaint does not allege that the "time is of the essence" clause was waived and by taking their allegations as true, the closing date was never extended or requested to be extended past 29 January 2021, thus the Contract naturally terminated after 29 January 2021. Further, the Complaint does not allege Plaintiffs ever "tendered performance of their obligations under the Contract, much less by the extended outside closing date of January 29, 2021." Thus, because the "time was of the essence" provision and the final extended closing date had long passed before the sale of Seawatch there is no basis for Plaintiffs' breach of contract claim because the Contract automatically terminated on 29 January 2021.

When a contract does not contain a time is of the essence clause, "the law generally allows the parties a reasonable time after the date set for closing to complete performance." *Fletcher v. Jones*, 314 N.C. 389, 393, 333 S.E.2d 731, 734 (1985). When a time is of the essence clause is included in a contract, waiver of it

> is always based upon an express or implied agreement. There must always be an intention to relinquish a right, advantage or benefit. The intention to waive may be expressed or implied from acts or conduct that naturally leads the other party to believe that the right has been intentionally given up.

*Fairview Devs., Inc. v. Miller*, 187 N.C. App. 168, 172, 652 S.E.2d 365, 368 (2007) (quoting *Patterson v. Patterson*, 137 N.C. App. 653, 667, 529 S.E.2d 484, 492 (2000)). Further, "[t]here can be no waiver [of a time is of the essence clause] unless it is

intended by one party and so understood by the other, or unless one party has acted so as to mislead the other." *Fairview*, 187 N.C. App. at 173, 652 S.E.2d at 368 (quoting *Klein v. Avemco Ins.*, 289 N.C. 63, 68, 220 S.E.2d 595, 599 (1975)).

This Court has held when "subsequent written amendments to the contract unequivocally incorporate[] by reference the entire contract, including the 'time is of the essence' clause[]" and "[i]t is undisputed that plaintiff did not close within the time frame set forth in . . . the contract as amended[] . . . plaintiff's claim for breach of contract must fail." *S.N.R. Mgmt. Corp. v. Danube Partners 141, LLC*, 189 N.C. App. 601, 620, 659 S.E.2d 442, 455 (2008). In *S.N.R. Management Corp.*, this Court considered similar facts as here where an initial contract contained a more general "time is of the essence clause" which stated "[t]ime is of the essence in completing every item called for by this Contract." *Id.* at 618, 659 S.E.2d at 454. In *S.N.R. Management Corp.*, the parties executed three written amendments to their original contract to extend the closing date, all of which stated "[e]xcept as amended herein, all terms and conditions of the Contract shall remain in full force and effect." *Id.* at 619, 659 S.E.2d at 455. This Court determined,

> the amendments changed only the latest possible closing date, but retained all other provisions of the contract, including the contract's "time is of the essence" clause. Moreover, since the amendments retained the other provisions of the contract, defendant did not "show an intention to relinquish" the "time is of the essence clause" in executing the amendments.

*Id.* at 619-20, 659 S.E.2d at 455.

Here, the Contract contains a time is of the essence clause on the first page of the Contract:

> **Closing and Closing Date.** The consummation of the purchase and sale of the Property (the "Closing") shall take place on or before December 9, 2020 (the "Closing Date"), *time being of the essence*, by such method (including by mail) as reasonably determined by Seller; provided, however, that in the event that closing under the Trust Contract (defined in Section 23) is extended until January 15, 2021, the Closing Date shall be extended to a date that is on or before January 9, 2021.

Plaintiffs argue on appeal the time is of the essence clause "clearly referred only to the 9 December 2020 closing date" because in setting an alternative closing date, namely "a date that is on or before January 9, 2021," the amended closing date was "not expressly essential or clearly defined," and therefore, "expressly waived." Additionally, Plaintiffs argue the time is of the essence clause was waived because the two amendments to the Contract omit the time is of the essence clause language.

The First Amendment to the Contract executed on 9 November 2020 does not state its purpose or include any mention of an extended closing date. The parties admit its purpose was to extend the closing date to 15 January 2021. Additionally, the First Amendment states "[i]n the event of any conflict between the terms and conditions of this First Amendment and the [Contract], this First Amendment shall control."

On 18 January 2021, the parties executed the Second Amendment which states, "Section 3 of the [Contract] is amended to provide that Closing shall take place

on or before January 29, 2021." The Second Amendment contained language stating "[i]n the event of any conflict between the terms and conditions of this Second Amendment and the [Contract], this Second Amendment shall control." Both amendments fully incorporated the Contract by reference. Plaintiffs argue the "any conflict" provisions providing for the amendment to control waived the time is of the essence clause because the amendments do not contain the language. We disagree.

Here, considering the Contract and both amendments in their entirety, the time is of the essence clause is not waived by subsequent amendments to extend the closing date because the Contract was fully incorporated by reference. Thus, absent any allegation in the Complaint that the clause was waived by any express or implied action by Defendants, the Contract language defeats Plaintiffs' breach of contract claim.

Thus, there is no basis for Plaintiffs' breach of contract claims because no enforceable contract existed at relevant times to the causes of action. *See BDM Invs.*, 264 N.C. App. at 291-92, 826 S.E.2d at 756-57. Viewing the allegations in the Complaint as true, and in light of the exhibits attached to and referenced therein, we conclude the Contract naturally terminated after the expiration of the 29 January 2021 closing date as Plaintiffs did not tender performance.

**C. Fraud**

Plaintiffs' third claim for relief alleges fraud against South River and Tatum. In allegations of "fraud, duress or mistake, the circumstances constituting fraud or

mistake shall be stated with particularity." N.C. Gen. Stat. § 1A-1, Rule 9(b). Our

Supreme Court has elaborated on the particularity requirement stating:

> The particularity required by the rule generally encompasses the time, place and contents of the fraudulent representation, the identity of the person making the representation and what was obtained by the fraudulent acts or representations. The particularity required cannot be satisfied by using conclusory language or asserting fraud through mere quotes from the statute.

*Terry v. Terry*, 302 N.C. 77, 85, 273 S.E.2d 674, 678 (1981) (cleaned up). "A successful

fraud claim requires a plaintiff prove: (1) representation or concealment of a material

fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which

does in fact deceive, (5) resulting in damage to the injured party." *Hale*, 294 N.C. App.

at 328, 904 S.E.2d at 150 (quoting *Value Health Sols., Inc. v. Pharm. Rsch. Assocs.,

Inc.*, 385 N.C. 250, 264, 891 S.E.2d 100, 112 (2023)).

Plaintiffs allege the following in support of their fraud claim: (1) South River

and Tatum should have known, despite the Sixth Amendment, that SSH would want

to enforce the Bond Replacement Agreement in full and require the replacement of

existing bonds upon purchase; (2) Plaintiffs believe and allege South River and Tatum

"knew they would not assume the bond replacement obligations imposed on [South

River] as buyer if its plan to sell Seawatch without doing so were detected by SSH[;]"

(3) no one informed Plaintiffs of "SSH's intentions to commence legal claims or enforce

its rights under the Bond Replacement Agreement, or the knowledge [that South

River] and, its affiliate and successor, [SR Communities], prior to formation of the

Contract [] would not assume any bond obligations[;]" (4) the inclusion of Section 24 in the Contract, a confidentiality provision, was to prevent Plaintiffs from discovering material information; (5) Section 10 of the Contract requiring compliance with the Sixth Amendment "but not the underlying Bond Replacement Agreement" and "their inclusion of Section 23 in the Contract while knowing that although they could assume the bond replacement obligations required by the July 8 Contract, they never intended to do so[;]" (6) Plaintiffs did not have the ability to learn "that SSH intended to take legal action upon the Bond Replacement Agreement and, if it did, that [South River] would not comply with its obligations under the July 8 Contract[;]" and (7) Plaintiffs could not have discovered South River and Tatum's intentions not to comply with "their contractual obligations to NMLT through the use of reasonable diligence."

"When reviewing pleadings with documentary attachments on a Rule 12(b)(6) motion, the actual content of the documents controls, not the allegations contained in the pleadings." *Hale*, 294 N.C. App. at 328, 904 S.E.2d at 150 (quoting *Schlieper v. Johnson,* 195 N.C. App. 257, 263, 672 S.E.2d 548, 552 (2009)). Here, the Contract defeats Plaintiffs' allegations of fraud as the Contract proves Plaintiffs were aware they would take the property subject to the Bond Replacement Agreement. "[A]ny reliance on the allegedly false representations must be reasonable." *Mancuso v. Burton Farm Dev. Co.*, 229 N.C. App. 531, 546, 748 S.E.2d 738, 749 (2013). Paragraph five of the Contract reads in pertinent part: "[t]he property shall be conveyed by Seller to Buyer at Closing free and clear of all liens and encumbrances, except the following

(collectively, the "Permitted Exceptions") . . ." which includes the "Bond Replacement Agreement . . . ." Further, the Contract contains the following provision in relevant part:

> 13. **"AS IS SALE"**. BUYER ACKNOWLEDGES THAT EXCEPT AS EXPRESSLY SET FORTH IN THIS CONTRACT (A) NEITHER SELLER NOR ANY OWNER, PRINCIPAL, AGENT, ATTORNEY, EMPLOYEE, BROKER OR OTHER REPRESENTATIVE OF SELLER, HAS MADE ANY REPRESENTATION OR WARRANTY OF ANY KIND WHATSOEVER, EITHER EXPRESS OR IMPLIED, WITH RESPECT TO THE PROPERTY OR ANY MATTER RELATED THERETO, AND (B) BUYER IS NOT RELYING ON ANY WARRANTY, REPRESENTATION, OR COVENANT, EXPRESS OR IMPLIED, WITH RESPECT TO THE CONDITION OF THE PROPERTY AND IS ACQUIRING THE PROPERTY IN ITS "AS-IS" CONDITION WITH ALL FAULTS.

Additionally, Plaintiffs' claim for fraud fails because they fail to establish "what was obtained as a result of the fraudulent acts or representations." *Value Health*, 385 N.C. at 263, 891 S.E.2d at 112. Plaintiffs bring this claim against South River and Tatum, not NMLT. South River, by not completing their contract with Plaintiffs lost over $1 million in the "flip" deal. NMLT, the owner of Seawatch prior to its transfer, ultimately sold Seawatch to SR Communities instead of South River for only a marginally lower price. There is nothing in the allegations to establish what South River or Tatum gained by any alleged misrepresentation except for the $200,000.00 in earnest money. The Contract clearly establishes the first $100,000.00 is non-refundable; and the Complaint establishes Defendants refunded the second earnest

money payment by tendering a check in the amount of $100,000.00 made payable to Plaintiffs, their refusal to accept it notwithstanding.

As Plaintiffs fail to allege "definite and specific" misrepresentations, and the reasonableness of reliance on alleged misrepresentations is negated by the terms of the Contract, Plaintiffs have failed to state a viable claim for fraud. We conclude the trial court did not err in granting Defendants' motions to dismiss for failure to state a claim.

**D. Voidable Transfer**

Plaintiffs' fourth claim for relief alleges voidable transfer against NMLT, South River, SR Communities, UA, UM, GG, and AS. The Uniform Voidable Transfer Act ("UVTA") provides remedies for creditors. N.C. Gen. Stat. § 39-23.7. Under the UVTA, a creditor is defined as "[a] person that has a claim" and a claim is defined as "[e]xcept as used in 'claim for relief,' a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." N.C. Gen. Stat. § 39-23.1(3), (4).

Plaintiffs fail to state a claim for voidable transfer because they were not nor could they have qualified as creditors with an enforceable claim at the relevant times because the parties did not have an enforceable contract for the purchase of Seawatch at the time SR Communities purchased the property. The trial court did not err in dismissing the claim.

## E. Unfair or Deceptive Trade Practices

Plaintiffs' fifth claim for relief alleges unfair or deceptive trade practices against South River, SR Communities, Tatum, UA, UM, GG, and AS.

"In order to establish a *prima facie* claim for unfair [or deceptive] trade practices, a plaintiff must show: (1) the defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *McDonald*, 259 N.C. App. at 589, 816 S.E.2d at 866 (quoting *Bumpers v. Cnty. Bank of N. Va.*, 367 N.C. 81, 88, 747 S.E.2d 220, 226 (2013)). "Actions for unfair or deceptive trade practices are distinct from actions for breach of contract, and a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under [N.C. Gen. Stat.] § 75-1.1." *McDonald*, 259 N.C. App. at 589, 816 S.E.2d at 866 (quoting *Suntrust Bank v. Bryant/Sutphin Props., LLC*, 222 N.C. App. 821, 826, 732 S.E.2d 594, 599 (2012)).

Here, Plaintiff makes the following additional allegations in support of their claim for unfair or deceptive trade practices:

> 169. The conduct set forth above – fraud and fraudulent transfers – were in or affecting commerce.
>
> 170. The conduct set forth was unfair or deceptive in that it was unethical or unscrupulous and had a tendency to deceive.
>
> 171. The Plaintiffs were entitled to treble damages and an award of reasonable attorney's fees.
>
> 172. As a direct and proximate result of the unfair and

deceptive trade practices by [South River], [SR Communities], Tatum, [UA], [UM], [GG], and [AS], the Plaintiffs have been injured in an amount exceeding twenty-five thousand dollars ($25,000.00).

As discussed *supra,* Plaintiffs' claim for unfair or deceptive trade practices fails because the contract between the parties had expired by operation of the "time is of the essence" clause, thus no enforceable contract existed at the time relevant to SR Communities' purchase of Seawatch. Further, Plaintiffs fail to allege how UA, UM, GG, and AS deceived them. The trial court did not err in dismissing this claim.

## F. Civil Conspiracy

Plaintiffs' sixth claim for relief alleges civil conspiracy by South River, SR Communities, Tatum, UA, UM, GG, and AS. "[T]o create civil liability for conspiracy the Plaintiffs must have alleged (1) an agreement between two or more individuals; (2) to do an unlawful act or to do [a] lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme." *Fox v. City of Greensboro*, 279 N.C. App. 301, 321, 866 S.E.2d 270, 287 (2021) (cleaned up). "In civil conspiracy, recovery must be on the basis of sufficiently alleged wrongful overt acts." *Shope v. Boyer*, 268 N.C. 401, 405, 150 S.E.2d 771, 773 (1966).

A claim for civil conspiracy is dependent on an underlying claim for unlawful conduct. *BDM Invs.,* 264 N.C. App. at 300, 826 S.E.2d at 762. As all other claims have been dismissed because the Contract was no longer enforceable at the relevant

times necessary to maintain such claims, Plaintiffs fail to state a claim for civil conspiracy as the claim cannot stand alone. *See Krawiec v. Manly*, 370 N.C. 602, 613-15, 811 S.E.2d 542, 550-51 (2018); *BDM Invs.*, 264 N.C. App. at 300, 826 S.E.2d at 762.

Further, assuming *arguendo* that there was a sufficiently alleged underlying claim for unlawful conduct still standing, Plaintiffs' only allegation regarding the existence of an agreement between Defendants is that these Defendants "shared officers, members, and resident agents . . . ." Plaintiff makes no more than a mere conclusion that the conspiracy exists because of the relationship between Defendants, thus they have failed to state a claim. *See Fox*, 279 N.C. App. at 321-22, 866 S.E.2d at 288.

**G. Moot Claims**

Lastly, Plaintiffs argue the trial court erred by granting the motions to dismiss by Bond Safeguard Insurance and Brunswick County. Bond Safeguard Insurance and Brunswick County filed separate motions to dismiss for failure to state a claim. The trial court filed a single order granting both motions on the basis that Bond Safeguard Insurance and Brunswick County's "involvement in this matter is moot."

Plaintiffs named Bond Safeguard Insurance and Brunswick County only as nominal parties in the Complaint asserting that the outcome of the litigation may affect the status of bonds affecting their rights. Plaintiffs did not bring a cause of action against Bond Safeguard Insurance or Brunswick County directly or seek relief

from either Defendant. As we find all other claims in the Complaint were properly dismissed, Defendants' involvement in the matter is now moot.

### III.    Conclusion

For the foregoing reasons, we affirm the trial court's orders granting all motions to dismiss for failure to state a claim as no enforceable contract existed at the relevant times and Plaintiffs have no enforceable right for relief.

AFFIRMED.

Judges STROUD and CARPENTER concur.

Report per Rule 30(e).